**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**MICHAEL SHERIDAN,**
    **Plaintiff,**

v.                             **Civil Action No. 3:25-MC-00012 (OAW)**

**EASTERN ACCOUNT SYSTEM OF**
**CONNECTICUT, INC,**
**EQUIFAX INFORMATION SERVICES,**
**LLC, and**
**TRANS UNION, LLC,**
    **Defendants.**                **March 13, 2025**

## RESPONSE IN OPPOSITION TO DEFENDANT EASTERN ACCOUNT SYSTEM OF CONNECTICUT, INC'S MOTION FOR RELIEF FROM WEST VIRGINIA DEFAULT JUDGEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60

Plaintiff Michael Sheridan opposes Defendant Eastern Account System of Connecticut, Inc's (hereinafter "EASC") Motion for Relief from West Virginia Default Judgement Pursuant to Federal Rule of Civil Procedure 60 (#8).

### INTRODUCTION

The Defendant's argument that it does not have minimum contacts with West Virginia flies in the face of the Defendant's entire business model. The Defendant is a debt collector who collects the debts of one of the largest telecoms in West Virginia: Frontier Communications. In this case, the underlying "debt" was an alleged debt owed to Frontier Communications. The Defendant is a licensed debt collector in West Virginia. See Exhibit 9. The Defendant is bonded pursuant to West Virginia's debt collection laws. See Exhibit 12. The Defendant is registered to do business in West Virginia with the West Virginia Secretary of State. See Exhibit 5. Other courts examining near identical fact patterns have found that EASC had minimum contacts with the jurisdiction.

Defendant collected an alleged account from Michael Sheridan. The Plaintiff repeatedly disputed the debt, pointing out that the debt obligation was not owed due to a prior lawsuit with Frontier. Despite these notices and disputes, EASC continued to attempt to collect the debt. Plaintiff brought an action to solve the problem after it was clear that negotiations were not going to resolve it. See Exhibit 11 p. 9, *Towles v. Eastern Account Systems*, Mid. Dist. of Ala. 3:22-cv-00204 (Jan. 23, 2023).

After ignoring service of process via the West Virginia Secretary of State, the District Court for the Southern District of West Virginia obliged Plaintiff's counsel to serve the Defendant via personal service upon the corporation AND upon President Steve Zank. Upon achieving personal service of the complaint, the District Court allowed the Plaintiff to proceed with a hearing on damages after ensuring that Defendant and its CEO were personally served once again and had actual notice. Finally, after the hearing on damages, the District Court required the Plaintiff to *again* personally serve the Defendant and its CEO. All told, the District Court for the Southern District of West Virginia bent over backwards to ensure Defendant had notice of this proceeding –not just of the complaint but also of the motion and order on default prior to the Court's entry of Default. See Exhibits 2, 6, and 8. The Court's well-reasoned order establishes the basis of the default judgment. See Exhibit 1. The Defendant had numerous opportunities to litigate its defenses in the underlying action, including jurisdiction, and chose not to do so. Instead, the Defendant's litigation strategy relies on taking defaults and not paying to defend cases. Only after the Plaintiff called the Defendant's bluff and began to collect on the judgment by executing a writ did the Defendant finally step forward to raise what it claims are unfair attempts to hold it liable for its unlawful debt collection conduct.

## LEGAL STANDARD

The Fourth Circuit has well established case law interpreting the various Supreme Court cases on personal jurisdiction. "Under Rule 12(b)(2), a defendant 'must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge.' *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). The plaintiff must establish personal jurisdiction by a preponderance of the evidence but need only make a *prima facie* showing. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). In considering whether a plaintiff has met this burden, a court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction. *Grayson*, 816 F.3d at 269. A court must also "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020).

"Rule 4(k)(1) provides that the district court may exercise personal jurisdiction over [defendant] if he is 'subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located,'" *i.e.*, Virginia. Fed. R. Civ. P. 4(k)(1). *Id.* Similarly, *W. Va. Code* §56-3-33, "Actions by or against nonresident persons having certain contacts with this state; authorizing Secretary of State to receive process; bond and fees; service of process; definitions; retroactive application," contains the West Virginia "long arm" statute. Herein the *West Virginia Code* states that:

> (a) The engaging by a nonresident, or by his or her duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7), inclusive, of this subsection shall be considered equivalent to an appointment by a nonresident of the Secretary of State, or his or her successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state, including an action

3

or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from, or growing out of, such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:

(1)**Transacting any business in this state;**

(3)**Causing tortious injury by an act or omission in this state; …**

(4)**Causing tortious injury in this state by an act or omission outside this state if he or she regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state**;

(c) Service shall be made:
By leaving the original and two copies of both the summons and the complaint, and the fee required by §59-1-2 of this code with the Secretary of State, or in his or her office, and this service shall be sufficient upon the nonresident…

W. Va. Code §56-3-33 [emphasis added].

"To meet the constitutional due process requirements for personal jurisdiction, whether under Rule 4(k)(1) for Virginia or Rule 4(k)(2) for the United States, [defendant] must have 'minimum contacts' such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Consulting Eng'rs Corp.*, 561 F.3d at 277 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95, (1945)). The minimum contacts inquiry requires [plaintiff] to show that [defendant] 'purposefully directed his activities at the residents of the forum' and that Appellants' causes of action 'arise out of' those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (citation and quotation omitted). The inquiry is designed to ensure that [defendant] is not 'haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts'" *Id.* at 475. In other words, it protects him from having to defend himself in a forum where he did not anticipate being sued. *See World—Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559,

4

62 L. Ed. 2d 490 (1980); *see also ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997) (underscoring that minimum contacts must have been so substantial that 'they amount to a surrogate for presence and thus render the exercise of sovereignty just")." *UMG Recordings*, 963 F. 3d at 351.

## ARGUMENT

EASC moves this honorable Court for relief from default judgment in a hearing in which EASC failed to appear after being served numerous times, including, pursuant to an order by the District Court, having been personally served with a copy of the motion for default judgment and proposed order on January 29, 2024. See Exhibit 8, Affidavit of Service on EASC President Steven Richard Zank, (Jan. 29, 2024).

**1.  EASC purposefully availed itself of West Virginia jurisdiction.**

EASC's primary argument that the Plaintiff's FCRA complaint does not allege claims that involve the EASC's conduct in West Virginia is patently ridiculous. EAS is a debt collector registered to do business in West Virginia and is actively conducting business collecting debts in West Virginia. See Exhibit 9, WV Tax Dept. Printout Showing EASC Registered as a Debt Collector in WV as of March 5, 2025. Plaintiff Michael Sheridan has never resided in a state other than West Virginia. EASC was collecting a debt he did not owe from Mr. Sheridan by parking a debt on Mr. Sheridan's credit report and had already been adjudicated in another case:

**Plaintiff's Initial Efforts to Fix Credit Reporting Issues**

6. On or about May 2, 2019, Plaintiff's received the arbiter's 38-page reasoned decision on his years-long case regarding unfair and deceptive acts and practices in conjunction with Frontier's provision of internet service.

7. In this order, Judge Brewer, the arbitrator selected by American Arbitration Association to adjudicate the claims, ruled that Frontier had committed unfair and deceptive acts and practices over a three-year period in its bill and services to Plaintiff.

8. Mr. Sheridan was awarded damages as well as fees and costs in that matter.

9. In or about October 2020, Plaintiff learned that his credit report contained collection entries regarding Frontier's attempt to collect the same account for which they had been found to have committed unfair and deceptive practices in the administration of for a three-year period.

10. The collection efforts were undertaken by a third-party collection agency, Defendant EASC.

11. Plaintiff's counsel reported the issue to Frontier's counsel but heard nothing back on the issue.

12. Thereafter, EASC continued to dun Mr. Sheridan's credit report.

See Exhibit 10, Plaintiff's Complaint p. 3. Further, the Plaintiff clearly establishes the residency of all the parties on the prior page of this complaint:

1. Plaintiff Michael Sheridan ("Plaintiff" or "Mr. Sheridan") is a resident of Greenbrier County, West Virginia, which is within the territorial confines of the Southern District of West Virginia. He is a "consumer" as defined by 15 U.S.C. §1681a(c).

2. (a) Defendant Equifax Information Services, LLC ("Equifax") is a corporation registered to do business in West Virginia, with its principal office in Georgia.

(b) Defendant Equifax is a "consumer reporting agency" as defined in 15 U.S.C. §1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

(c) Equifax disburses such consumer reports to third parties under contract for monetary compensation.

3. Defendant Eastern Account System of Connecticut, Inc. ("EASC") is a corporation having its principal offices in 111 Park Ridge Road in Brookfield, Connecticut, and which does business in West Virginia. Defendant EASC furnishes information to credit reporting agencies regarding an alleged account owed by Plaintiff.

*Id* at 2. The complaint clearly establishes that Plaintiff is a resident of West Virginia and that EASC is a Connecticut corporation doing business in West Virginia, including furnishing credit report information about Plaintiff. EASC registered with West Virginia so that it could purposefully avail itself of collecting debts in West Virginia. EASC even had a small debt collection surety bond registered in West Virginia. See Exhibit 12. Mr. Sheridan was able to recover $5,000 of the judgment pursuant to this debt collector's surety bond.

By parking a debt on Plaintiff's credit report that Plaintiff did not owe, EASC reached into West Virginia, where Plaintiff lives, to collect a debt. As a result, EASC availed itself of the privilege of conducting business in West Virginia. See *UMG Recordings, Inc*. 963 F 3d. at 353 ("The first prong, purposeful availment, concerns whether and to what extent 'the defendant purposefully avail[ed] himself of the privilege of conducting business under the laws of the forum state.' *Consulting Eng'rs Corp*., 561 F.3d at 278."). The Plaintiff properly pled and established the jurisdictional requirements necessary to show that EASC was subject to the West Virginia law and brought a claim related specifically to the EASC's contact with West Virginia.

## 2. EASC has a pattern and practice of ignoring lawsuits.

EASC then argues it made a choice specific to this case to ignore the lawsuit due to an alleged lack of jurisdiction. However, this assertion is disingenuous because Plaintiff

7

demonstrated to the federal district court that EAS's litigation strategy is to ignore complaints

and not pay default judgments.  Of the thirteen (13) cases the Plaintiff researched before the

motion for default in this case, EASC defaulted in all of them:

| Harris v. Eastern Account Systems, NDTX, 4:23-cv-00512-P | 5/24/2023 | Default | 11/8/2023 |
|---|---|---|---|
| Harden v. Eastern Account Systems, S. Dist. Of Ind. Case No. 22-cv-12363-TWP-MG | 6/24/2022 | Default | 2/17/2023 |
| Quintanilla v. Eastern Account Systems, WDTX, Case no. 1:22-cv-00428-RP | 5/6/2022 | Default then voluntarily dismissed by Plaintiff | 5/17/2023 |
| Towles v. Eastern Account Systems, Mid. Dist. Of Ala. 3:22-cv-00204 | 4/27/2022 | Default | 1/23/2023 |
| Earnhart v. Eastern Account Systems, MDFL Case No. 8:22-cv-00980-MSS-TGW | 4/27/2022 | Default | 11/8/2022 |
| Burnham v. Eastern Account Systems, NDGA Case No. 1:21-cv-03306-TWT-JKL | 8/13/2021 | Default | 12/22/2021 |
| Rattner v. Eastern Account Systems, Dist. Ct. of Conn. Case No. 3:21cv982 (CSH) | 7/18/2021 | Default-granted in part/denied in part | 3/17/2023 |
| Flowers v. Eastern Account Systems, MDFL Case No. 8:21-cv-1210-KKM-JSS | 5/19/2021 | Default | 2/7/2022 |
| Williams v. Eastern Account Systems, NDAL Case no. 5:20-cv-1996-LCB | 12/11/2020 | Default | 2/11/2022 |
| Centeno v. Eastern Account Systems, NDAL Case no. 2:20-CV-01266-MHH | 8/26/2020 | Default | 11/3/2020 |
| Kirkpatrick v. Eastern Account Systems, EDVA Case no. 2:19-cv-473 | 9/11/2019 | Default | 2/28/2020 |
| Ruddick v. Eastern Account Systems, SDIN Case no 1:17-cv-1644-WTL-MJD | 5/18/2017 | Default | 8/30/2017 |
| Snow v. Eastern Account Systems, SDIL Case no. 15-CV-1229-SMY-RJD | 1/5/2015 | Default | 2/13/2013 |

It is worth noting that one of the cases, *Rattner v. EASC* is from the District Court of Connecticut, to which EASC could not possibly argue that there was no personal jurisdiction. See Case no. 3:21-cv-982 (CSH) dkt no. 20. All of the default orders are included, in order, in Exhibit 11. There, the Court found that the parking of a debt on the Plaintiff's credit report EASC did not make a case-specific decision to challenge personal jurisdiction in the *Sheridan* case. Instead, EASC executed its long-standing litigation strategy of ignoring lawsuits and daring consumers to attempt to collect. Exhibit 1, Order, p. 7 ("Mr. Sheridan has demonstrated that Eastern Account has a pattern of ignoring lawsuits filed against it resulting in default. [ECF 38-1].") Mr. Sheridan called EASC's bluff and is seeking to put a damper on its unlawful debt collection conduct. It is further worth noting that the *Towels v. EASC* case from Alabama cited above is nearly identical in facts to this case. Exhibit 11 p. 9, *Towles v. Eastern Account Systems*, Mid. Dist. of Ala. 3:22-cv-00204 (Jan. 23, 2023). There, the Court found that EASC had minimum contacts with Alabama to confer jurisdiction. *Id.*

**3. Sheridan obtained proper service on EASC.**

There is also no question that Plaintiff properly served Defendant. Plaintiff utilized a belt and suspenders strategy and tried to get the EASC to participate. Plaintiff served the West Virginia Secretary of State originally for the case by serving the W. Va. Secretary of State pursuant to W. Va. Code §56-3-33. See Exhibits 3-7. On July 17, 2023, Mr. Sheridan filed a Motion for Default Judgment against EASC, and on July 19, 2023, the Clerk entered entry of default as to EASC. Not satisfied to proceed with the default, the District Court ordered Mr. Sheridan to ensure proper service upon EASC. Thereafter, the Plaintiff personally served EASC with the Complaint at its corporate headquarters on the person responsible for accepting service. See Exhibit 2. Additionally, the Plaintiff served Steve Zank, President of EASC, personally with

the motion and proposed order on default on January 29, 2024. See Exhibit 8. EASC chose to

ignore that as well. Even after the District Court held a hearing on damages, the Court directed

Plaintiff to serve his Post Hearing Briefing [ECF 38] on Steven Richard Zank, the Vice President

of EASC. Exhibit 1, p. 3. Mr. Zank was personally served on January 29, 2024. [ECF 41].

EASC had multiple opportunities to raise the issue of jurisdiction, due in large part to the

Southern District of West Virginia's reticence to enter an order of default without ensuring that

EASC was provided an opportunity to be heard. EASC instead did nothing and should not be

allowed to disturb the District Court's detailed findings.

### 4. **EASC is not entitled to a set-off.**

The Defendant's second argument Defendant is entitled to a setoff from the payments by the

Credit Bureau defendants is further without merit and ignores the basic structure of litigation in

the FCRA context. First, the damages for each of the Defendants, specifically the furnisher,

EASC, and the bureaus, arise under different statutory obligations. The overwhelming body of

caselaw has held that non-settling defendants are not entitled to credit for settlements because

there is no right to offset, contribution, indemnification or set-off under the FCRA. *See Sloane v.*

*Equifax Info. Servs.*, LLC, 510 F.3d 495, 501 (4th Cir. 2007) (noting that "[a]rguably, the 'one

satisfaction rule' does not even apply to FCRA claims"); *Vasquez-Estrada v. Collecto, Inc.*, No.

3:14-CV-01422-ST, 2015 WL 6163971, at *2 (D. Or. Oct. 20, 2015) ("Even if plaintiff sought

duplicate damages, there is no express or implied right to an offset of amounts that plaintiff may

have received in settlement from other FCRA defendants."); *Brim v. Midland Credit Mgmt., Inc.,*

795 F. Supp. 2d 1255, 1265 (N.D. Ala. 2011) ("each of the sums recouped by plaintiff by other

entities subject to the FCRA were for the wrong doings of those various entities"; no basis to

allow the defendant offset based on settlement amounts paid by other defendants); *McMillan v.*

*Equifax Credit Information Services, Inc.*, 153 F.Supp.2d 129, 132 (D. Conn. 2001) (recognizing that "[c]ourts have found that the FCRA does not provide a right to indemnification"); *Kay v. First Continental Trading, Inc.*, 966 F.Supp. 753, 754–55 (N.D. Ill. 1997) (holding that the FCRA contains no express provision for contribution); *Nelson*, LLC, 522 F.Supp.2d at 1239 (holding no offset is warranted by virtue of plaintiff's settlement with a co-defendant.)

Furthermore, courts have denied non-settling FCRA defendants' motions to compel settlement agreements with co-defendants where, as here, the plaintiff's FCRA claims against each defendant are completely independent and the information contained within the agreement is confidential. *See Thompson v. Equifax Info. Servs., LLC*, No. 2:18-CV-12495-TGB, 2019 WL 2059123, at \*2, \*4 (E.D. Mich. May 9, 2019) (acknowledging the defendant does not have a right to contribution or indemnification under the FCRA); *Lyons v. Experian Info. Sols., Inc.*, No. 3:14-CV-211-MPM-SAA, 2015 WL 10008226, at \*1 (N.D. Miss. Oct. 29, 2015) (denying motion to compel and holding that because there is "no right to either indemnification or offset under the FCRA[,] revealing confidential settlement information between plaintiff and prior defendants would not lead to the discovery of admissible evidence."); *see also, Zook v. Equifax Info. Servs., LLC*, No. 3:17-CV-2003-YY, 2018 WL 10604347, at \*2 (D. Or. July 2, 2018) (denying defendant's motion to compel plaintiff's settlement agreement with co-defendant because defendant failed to establish the terms of the agreement, including the settlement amount, were relevant prior to trial).

An examination of the counts would have indicated this to Defendant. Specifically, the credit bureaus' obligations to Plaintiff were to reinvestigate his disputes under 15 U.S.C. §1681i and to assure the maximum possible accuracy of Plaintiff's credit report under 15 U.S.C. §1681e(b). The bureaus were also liable for reporting information they could not verify under 15

U.S.C. §1681i(a)(5). EASC's liability arose under 15 U.S.C. §1681s-2(b) by independently failing to investigate Plaintiff's dispute properly and for posting knowingly incorrect and defamatory information on Plaintiff's credit report.

Defendant is entitled to no contribution from the bureau defendants because their conduct differed. The bureaus took false information and failed to reinvestigate the report of being false. EASC, however, took false information and posted it to Plaintiff's credit with the knowledge that they knew or should have known was completely false. And even when Plaintiff showed that it was untrue, they left it there. The District Court, in its order on default, took all of this into consideration in entering its default judgment order. See Exhibit 1, Default Judgement Order. Specifically, the Court found that EASC's conduct of ignoring lawsuits filed against it, resulting in default, and its "passive debt collection" business practice warranted an award of punitive damages that are separate and apart from any conduct by other settling defendants. *Id*. at 7. The District Court further protected Defendant by ensuring that Plaintiff had adequately pled entitlement to punitive damages:

> "Well, you did seek punitive damages in your complaint. What allegations of the complaint would satisfy the willfulness standard that you advocate? And you if could, point to them by number... I need to know the specific allegations which tie with your allegation of willfulness from a factual standpoint." Exhibit 13, Transcript, p. 6, lines 16-19; p. 7, lines 6-8.

The District Court explained its concern for due process purposes:

> "So the defendant we know has been served with the complaint. The complaint is the limit of the Fourteenth Amendment notice from a due process standpoint that Eastern has. So for instance, Eastern could very well have taken this complaint and said -- and I'm not saying it did, of course. But it could have read the complaint, read the notice of the allegations that are there and found, and said, Well, this Plaintiff's going to get compensatory damages against us, but it's only got a paragraph or two in there on willfulness. I think we're pretty safe. I don't think the judge will order punitives and we'll just -- we'll suffer the entry of default judgment. ...So do you see the issue? There may be a notice of due process issue with us now receiving -- the Court receiving evidence outside the four corners of the complaint about willfulness because that goes beyond the notice that the defendant had from the allegations in

the complaint, which in essence are now going to be admitted under the rules about what
willfulness occurred in this particular case. Exhibit 13, Transcript, pp. 8-9, lines 15-11.

After Plaintiff recited the allegations from the pleading seeking punitive damages for willful

violations of the FCRA, the District Court was satisfied the pleading provided adequate notice.

Exhibit 13, Transcript, pp. 9-11, lines 24-9. This exchange again demonstrated the high regard

that the District Court for the Southern District of West Virginia held for Defendant EASC's due

process rights and highlights the complete disregard that Defendant EASC showed in its

litigation conduct.

### 4. Fees and Costs

The Plaintiff further moves for fees and costs pursuant to 15 U.S.C. §1681n(a)(3) for the

time and expense spent litigating this motion. The Court in the West Virginia action awarded

attorney's fees and costs pursuant to 15 U.S.C. §1681n(a)(3). See Exhibit 1 p. 8. Plaintiff had to

retain local counsel with a retainer of $2,500, and Mr. Sheridan and Mr. Nolan had to spend

additional time assisting local counsel with drafting a response to Defendant's motion in this

Court. Plaintiff's request for $535 per hour was granted in the West Virginia Case Plaintiff's

counsel has 6.8 hours invested in accumulating evidence and legal research for this motion,

representing fees of $3,638. Therefore, Plaintiff's counsel requests fees and costs of $6,138

pursuant to 15 U.S.C. §1681n(a)(3).

### 5. Discovery in the Alternative

Should the Court be inclined to Grant the Defendant's motion, Plaintiff's request limited

discovery for the purpose of establishing minimum contacts. Namely, Plaintiff would seek

limited discovery to establish that at the time of the suit, the number of contracts Defendant had

with West Virginia citizens; the number of targeted mail solicitations to sent to West Virginians;

any referral system that defendant had from Frontier Communications to identify more West

Virginia citizens; the number of times defendant entered the state to investigate claims for losses; and to confirm that the West Virginia courts were available to them in seeking to enforce obligations. See, *e.g. Travelers Health Association v. Virginia*, 339 U.S. at 648, 70 S.Ct. at 929-30, 94 L. Ed. at 1161 (the United States Supreme Court held Virginia could properly exercise jurisdiction over a Nebraska corporation where the defendant did not engage in mere isolated or short-lived transactions, but rather, systematically and widely entered into contracts with citizens of Virginia.)

## CONCLUSION

Defendant should not be allowed to hide behind its litigation strategy of obtaining strategic defaults and attempting to avoid justice. If Defendant believes it has legitimate defenses, the Court in West Virginia bent over backwards to protect the Defendant and ensure it had an opportunity to present those defenses. The Court even went so far as to order Plaintiff to personally serve the Defendant's owner with a copy of the Default motion and draft order. The Defendant still refused to participate.

All of this is on top of the fact Defendant regularly utilizes the laws and rights of the state of West Virginia as the debt collector for one of the state's largest telecoms, Frontier Communications. Defendant is a licensed debt collector in the state and has a bond. The Defendant is registered to do business in West Virginia. And the Defendant did so when it parked a debt on the Plaintiff's credit report and refused to remove it despite numerous attempts to get the debt deleted. For these reasons, the Court should deny the Defendant's motions set aside and Stay Plaintiff's writ. Further, the Plaintiff requests reasonable fees and costs with the additional pleading. Should the Court be inclined to grant the Defendant's motion, the Plaintiff

G:\2851 Michael Sheridan\002 V. Eastern Account System Of Connecticut, Inc\USDC CT-Pleadings\Response In Opposition To MTN To Set Aside FINAL HPL Clean 002.Docx

requests discovery to elucidate the Defendant's contacts as a debt collector in West Virginia and their numerous instances of availing themselves of West Virginia's laws for profit.

WHEREFORE, for the reasons articulated above, the Defendant's Motion for Relief from West Virginia Default Judgement Pursuant to Rule of Civil Procedure 60 should be denied.

Houston Putnam Lowry, Esq.
Counsel for Plaintiff Michael Sheridan
FORD & PAULEKAS, LLP
280 Trumbull Street - Suite 2200
Hartford, CT 06103
Direct: (860) 808-4213
Mobile: (860) 543-4372
Fax: (860) 249-7500
Email: PTL@HPLowry.com
Federal Bar # CT05955

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was delivered on this 13th day of March, 2025 to:

Michael Sheridan
820 Alum Springs Road
Frankford, VA 24938
ALSO VIA EMAIL - CessnaMike@gmail.com

Sabato Pellegrino Fiano, Esq/
Zeldes, Needle & Cooper, P.C.
1000 Lafayette Blvd., Suite 500
Bridgeport, CT 06604
VIA EMAIL ONLY - sfiano@znclaw.com

Houston Putnam Lowry, Esq.

G:\2851 Michael Sheridan\002 V. Eastern Account System Of Connecticut, Inc\USDC CT-Pleadings\Response In Opposition To MTN To Set Aside FINAL HPL Clean 002.Docx

# EXHIBIT 1

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY**

MICHAEL SHERIDAN,

      Plaintiff,

v.                               CIVIL ACTION NO.  5:23-cv-00238

EASTERN ACCOUNT SYSTEM
OF CONNECTICUT, INC.,
EQUIFAX INFORMATION SERVICES, LLC, and
TRANS UNION, LLC,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

On July 19, 2023, the Clerk entered an Entry of Default as to Eastern Account

System of Connecticut, Inc. ("Eastern Account") pursuant to *Federal Rule of Civil Procedure*

55(a). On January 5, 2024, the Court held a hearing on damages and directed counsel for

Plaintiff Michael Sheridan to file a Post Hearing Brief on Damages [ECF 38]. The matter is

ready for adjudication.

**I.**

On March 28, 2023, Mr. Sheridan instituted this action against Eastern Account,

Equifax Information Services, LLC, ("Equifax") and Trans Union, LLC ("Trans Union") alleging

they failed to reasonably investigate disputes with his credit report and continually reported an

inaccurate delinquent payment owed to Frontier Communications ("Frontier"). [ECF 1]. The

action is brought pursuant to 15 U.S.C. §§ 1681 – 1681x ("Fair Credit Reporting Act"). On

November 3, 2023, the Court received a Notice of Settlement with Defendants Equifax

Information Services and Trans Union, LLC. [ECF 31]. The single remaining claim is against Eastern Account for violation of 15 U.S.C. § 1681s-2(b).

In 2020, Mr. Sheridan learned his credit report contained collection entries regarding a debt to Frontier Communications that he had successfully litigated in arbitration. [ECF 1 at ¶¶ 6–9]. Mr. Sheridan contacted Frontier's legal counsel but received no response. [*Id.* at ¶ 11]. Subsequently, he sent several disputes to the Defendant credit bureaus. [*Id.* at ¶ 13]. Pursuant to the FCRA, the credit bureaus relayed the dispute to Eastern Account via the automated system known as "e-Oscar". [*Id.* at ¶¶ 18, 41]. Upon receipt of the disputes, Eastern Account failed to fully and properly investigate Mr. Sheridan's disputes. [*Id.* at ¶ 41]. Eastern Account failed to review all relevant information provided by the consumer reporting agencies. [*Id.* at ¶ 42]. No reasonable investigation was conducted by Eastern Account. [*Id.* at ¶ 45]. As a result, Mr. Sheridan was forced to pay an excessive interest rate on a recent car purchase. [*Id.* at ¶ 20]. Mr. Sheridan also suffered loss of credit, loss of ability to purchase and benefit from credit, increased insurance rates, mental and emotional pain, anguish, humiliation, and embarrassment of credit denials. [*Id.* at ¶ 48]. As part of his prayer for relief, Mr. Sheridan requests all creditors who denied Mr. Sheridan a loan be advised the subject debt was invalid. [*Id.* at ¶ 49]. Additionally, Mr. Sheridan asserts he is entitled to recover costs and attorney fees pursuant to 15 U.S.C. §§ 1681n and 1681o. [*Id.* at ¶ 50].

On July 17, 2023, Mr. Sheridan filed a Motion for Default Judgment against Eastern Account [ECF 16]. On July 19, 2023, the Clerk entered entry of default as to Eastern Account. [ECF 17]. On September 19, 2023, the Court directed Mr. Sheridan to ensure proper service upon Eastern Account. [ECF 22]. Mr. Sheridan arranged for personal service upon Eastern Account on September 25, 2023. [ECF 24]. On January 5, 2024, the Court held an evidentiary hearing. Mr.

Sheridan and his counsel appeared. No representative appeared on behalf of Eastern Account. [ECF 36].

Mr. Sheridan testified the prime interest rate in effect in October 2022 was 7% based upon his internet search and the same auto loan financed at 7% would have yielded only a $6,734 finance charge and $577 monthly payments. [ECF 43 at 23]. Mr. Sheridan testified he is paying an additional $17,959.48 over the life of the loan due to the incorrect entry on his credit report. [*Id.*]. Due to the increased monthly payments, Mr. Sheridan testified he was forced to forego travel during his retirement to visit his grandchildren, forego obtaining loans to expand his barbecue business, and was denied the ability to obtain solar panels for his home. [*Id.* at 24–25; ECF 38 at 3]. Mr. Sheridan presented evidence that Santander, a consumer finance provider, denied his auto loan application, although a different lender ultimately extended credit at a high interest rate and denied funds for his desired solar panels. [*Id.*]. Mr. Sheridan also asserted that Eastern Account engages in "passive debt collection," also known as "credit parking," and that he is not the only individual to obtain a default against Eastern Account. Mr. Sheridan presented evidence that in the past seven years, 50% of all federal proceedings to which Eastern Account has been a party have resulted in default. [ECF 38-1].

At the conclusion of the hearing, the Court instructed Mr. Sheridan to serve his Post Hearing Briefing [ECF 38] on Steven Richard Zank, the Vice President of Eastern Account. Mr. Zank was personally served on January 29, 2024. [ECF 41].

## II.

When a party moves for a default judgment, Rule 55(b) authorizes a district court to "conduct hearings or make referrals" in order to, *inter alia*, "determine the amount of damages[,]

3

establish the truth of any allegation by evidence[,] or investigate any other matter." Fed. R. Civ.

P. 55(b)(2)(B)–(D). "[A] default judgment may not be entered without a full hearing unless the

damages are liquidated or otherwise uncontested." *Ins. Servs. of Beaufort, Inc. v. Aetna Cas. &*

*Sur. Co.*, 966 F.2d 847, 853 (4th Cir. 1992); *see also Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124,

131 (4th Cir. 2020). "Courts will not simply accept the plaintiff's statement of damages, but instead

must ensure that damages are appropriate." *Finney v. MIG Cap. Mgmt., Inc.*, No. CIV.A. 2:13-

02778, 2014 WL 1276159, at *10 (S.D.W. Va. Mar. 27, 2014) (Copenhaver, J.); *see also Cox v.*

*Lightning Cont. Servs., Inc.*, No. 5:19-CV-00178, 2022 WL 289748, at *2 (S.D.W. Va. Jan. 31,

2022) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young*

*Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)).

### A.    *Compensatory Damages*

Title 15 U.S.C. § 1681s-2(b)(1)(A)–(B) provides as follows respecting certain

duties imposed by the FCRA:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with
> regard to the completeness or accuracy of any information provided by a person to
> a consumer reporting agency, the person shall—
>
> > A. conduct an investigation with respect to the disputed
> > information;
> >
> > B. review all relevant information provided by the consumer
> > reporting agency pursuant to section 1681i(a)(2) of this title.

Our Court of Appeals has held "§ 1681s-2(b)(1) requires creditors after receiving

notice of a consumer dispute from a credit reporting agency, to conduct a *reasonable* investigation

of their records to determine whether the disputed information can be verified." *Johnson v. MBNA*

*Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004) (emphasis added). "Whether an investigation

was reasonable 'is based on an evaluation of information within the furnisher's possession, such

4

as correspondence between the consumer and the furnisher, the data identified by the reporting agency as disputed, and the furnisher's other records relating to the disputed account.'" *Manos v. Freedom Mortg. Corp.*, 2022 WL 874181, at *1 (4th Cir. Mar. 24, 2022) (citing *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 253 (4th Cir. 2017)).

Under 15 U.S.C. § 1681n, a prevailing consumer is entitled to "any actual damages sustained by" him or her. Damages for emotional distress and loss of reputation are recoverable under the FCRA. *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001). However, to recover damages for emotional distress a plaintiff must "reasonably and sufficiently explain the circumstances of [the] injury and not resort to mere conclusory statements." *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 503 (4th Cir. 2007); *see also Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 241 (4th Cir. 2009).

It is clear Eastern Account did not conduct a reasonable investigation into Mr. Sheridan's claims when it ignored the disputes sent by the Defendant credit bureaus. Had Eastern Account properly investigated the disputes, Mr. Sheridan would not have suffered $17,959.48 in excess finance charges based on his calculations. [ECF 38 at 3]. Accordingly, Mr. Sheridan is entitled to $17,959.48 in excess finance charges.

Additionally, Mr. Sheridan seeks compensatory damages based upon mental and emotional distress, impairment of reputation, and personal humiliation. The complaint alleges Mr. Sheridan "suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.' [ECF 1 at 9]. Mr. Sheridan testified Eastern Account's misconduct has resulted in a loss to him of $200 per month, lessening his ability to use that money on utility, medication, travel, and business expenses. [ECF at 24-25]. As noted, Santander denied him an auto loan and he had to forego solar

panels for his home based on his inaccurate credit report. [ECF 38 at 3]. An additional award of $7,040.52 is appropriate. The Court thus **FINDS** by a preponderance of the evidence that Mr. Sheridan is entitled to $25,000 in total compensatory damages.

### B.    *Punitive Damages*

"Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . such amount of punitive damages as the court may allow." 15 U.S.C.A. § 1681n(a)(1)(B)(2).

"The term 'willfulness,' within the meaning of the FCRA, includes acting with 'reckless disregard' of one's obligations under the statute." *Daugherty*, 701 F. App'x at 253 (4th Cir. 2017) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007)). Willful violations can be proven by showing not only knowing, intentional violations, but also violations in reckless disregard of the law. *Safeco Ins. Co.*, 551 U.S. at 57, 71 (finding "[t]he Court of Appeals correctly held that reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)."). "A showing of malice or evil motive is not required to prove willfulness under the Act." *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001). "A defendant may demonstrate reckless disregard of its statutory obligations by repeatedly ignoring warning signs that it is violating the law and by failing to take corrective action to prevent future violations." *Daugherty*, 701 F. App'x at 253 (4th Cir. 2017); *see also Phillips v. Trans Union, LLC*, 2017 WL 3911018, at *7 (W.D. Va. Sept. 6, 2017).

When determining whether punitive damages are appropriate, our Court of Appeals has required consideration of the following: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the

punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Saunders v. Branch Banking And Tr. Co. Of VA*, 526 F.3d 142, 152 (4th Cir. 2008) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)). The degree of reprehensibility is determined based on whether:

> [1] the harm caused was physical as opposed to economic; [2] the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; [3] the target of the conduct had financial vulnerability; [4] the conduct involved repeated actions or was an isolated incident; and [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm*, 538 U.S. at 419. "FCRA violations result in economic and emotional harm, but such violations will very infrequently cause physical harm or endanger the health and safety of others. . . . Yet Congress has nonetheless authorized punitive damages in FCRA cases." *Saunders*, 526 F. 3d at 152–53.

Punitive damages are plainly appropriate here. Respecting the first factor, Mr. Sheridan proved Eastern Account failed to reasonably investigate his dispute and instead continued its practice of "passive debt collection," with reckless disregard of his consumer rights. Mr. Sheridan filed multiple disputes with the Defendant credit bureaus that were then sent to Eastern Account via the e-Oscar system. [ECF 1 at 43–44]. Ultimately, Eastern Account failed to conduct a reasonable investigation. As a result, Mr. Sheridan suffered economic harm. Additionally, Mr. Sheridan has demonstrated that Eastern Account has a pattern of ignoring lawsuits filed against it resulting in default. [ECF 38-1].

To properly punish and deter Eastern Account from continuing its "passive debt collection" business practice, an award of two times the compensatory damages, for a total of $50,000.00, is appropriate under the second factor. Respecting the third factor, our Court of

Appeals has upheld large differences in compensatory damages and punitive damages. *See Saunders*, 526 F.3d at 154 (upholding $80,000 punitive damages award in case involving $1,000 statutory damages); *Daugherty*, 701 F. App'x at 260 (4th Cir. 2017) (remitting $2.5 million punitive damages award to $600,000, when compensatory damages were $6,128).

## C.    *Attorney Fees*

"Any person who willfully fails to comply with any requirement imposed under . . . . [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. § 1681n(a)(3). Inasmuch as Mr. Sheridan is a prevailing party, the Court determines in its discretion that he is entitled to an award of his reasonable attorney fees in the amount of $1,712.00.

## III.

Based upon the foregoing findings of fact and conclusions of law, it is **ORDERED** as follows:

1. That Mr. Sheridan be, and he hereby is, awarded against the Defendant Eastern Account   the sum of $25,000 in compensatory damages, $50,000 in punitive damages, and $1,712 in attorney fees; and

2. That this action be, and it hereby is, **DISMISSED** and **STRICKEN** from the docket.

The Court **DIRECTS** the Clerk to transmit a copy of this Order to counsel of record and any unrepresented party.

ENTER:        July 26, 2024

Frank W. Volk
United States District Judge

8

EXHIBIT 2

UNITED STATES DISTRICT COURT                                SOUTHERN DISTRICT OF WEST VIRGINIA

Michael Sheridan

                                    Plaintiff,                    Court File Number
                                                                   5:23-cv-00238
v.

                                                            **AFFIDAVIT OF SERVICE**
Eastern Account System of Connecticut, Inc., et al.
                                    Defendant(s),

State of Connecticut  }
                      } SS
County of Hartford    }

I, __Theresa Barnes__ , state that on
       (Name of Server)

__9__ / __21__ /2023 at __11__ : __55__ A M, I served the:
(Date of Service)        (Time of Service)

    Civil Cover Sheet; Summons & Complaint

upon: Eastern Account System of Connecticut, Inc.

therein named, personally at:    111 Park Ridge Rd
                                 Brookfield, CT 06804

by handing to and leaving with:

[ ]  the Registered Agent of Eastern Account System of Connecticut, Inc.
[X]  an Officer of Eastern Account System of Connecticut, Inc. _Client Relations Manager/_

__Camilla Machado__                              __Managing Agent__
(Name of the Person with whom the documents were left)    (Title or Relationship)

a true and correct copy thereof.

I declare under penalty of perjury that this information is true.

                    Dated: __9__ , __22__ /2023        _____
                                                        (Signature of Server)

                                                        __Theresa Barnes__
                                                        (Printed Name of Server)

---

* Service was completed by an independent contractor retained by Metro Legal Services, Inc.



Serial # KLESH 289330 1361

Re: Eastern Account System



legal support specialists since 1969

616 South 3rd Street
Minneapolis, MN 55415
(800) 488-8994
www.metrolegal.com

- 1 -

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### Beckley Division

**MICHAEL SHERIDAN,**
  **Plaintiff,**

v.                                          **Civil Action No. 5:23-cv-00238**

**EASTERN ACCOUNT SYSTEM OF CONNECTICUT, INC,**
**EQUIFAX INFORMATION SERVICES, LLC, and**
**TRANS UNION, LLC,**
  **Defendants.**

### CERTIFICATE OF SERVICE

I, Benjamin M. Sheridan, certify that a true copy of the foregoing **"Affidavit of Service"**

were served on the following Defendants via ECF or first-class mail, where indicated, on the 25th

day of September 2023.

Eastern Account System of Connecticut, Inc.
c/o Steve Zank
111 Park Ridge Rd.
Brookfield, CT 06804

*first-class mail*

                              **/s/ Benjamin M. Sheridan**
                              Benjamin M. Sheridan (# 11296)
                              Jed R. Nolan (W. Va. Bar #10833)
                              *Counsel for Plaintiffs*

                              Klein & Sheridan, LC
                              3566 Teays Valley Road
                              Hurricane, WV 25526
                              T: (304) 562-7111
                              F: (304) 562-7115
                              ben@kleinsheridan.com
                              jed@kleinsheridan.com

# EXHIBIT 3

Defendant details

 **West Virginia Secretary of State** (http://www.sos.wv.gov)
Mac Warner

Defendant details

Home (http://www.sos.wv.gov/pages/default.aspx) | Business4WV (http://www.business4wv.com/b4wvpublic/) | News Center (/news/Pages/default.aspx) | (http://www.facebook.com/wvsos) (http://twitter.com/wvsosoffice) (http://www.sos.wv.gov/_layouts/feed.aspx?xsl=1&web=%2Fnews&page=26402023-f08d-441f-9bbd-5690559009d1&wp=d963eb34-2126-4d12-bf9a-8c46be406e7e)

Secretary of State (http://www.sos.wv.gov/Pages/default.aspx) > Business and Licensing (http://www.sos.wv.gov/business-licensing/Pages/default.aspx) > Service of process search (/business/service-of-process/) > Defendant details

# Defendant details

### Civil action #

5:23-CV-00238 (/business/service-of-process/Home/Search?CivilActionNumber=5%3A23-CV-00238)

### Defendant

EASTERN ACCOUNT SYSTEM OF CONNECTICUT, INC. (/business/service-of-process/Home/Search?DefendantName=EASTERN%20ACCOUNT%20SYSTEM%20OF%20CONNECTICUT%2C%20INC.)

### Agent

STEVE ZANK

### Country

US - UNITED STATES

### County

Federal

### Service date

Wednesday, April 12, 2023

### Certified number

92148901125134100003783750

6/20/23, 9:46 AM

Defendant details

**Delivery date**

Monday, April 17, 2023

**USPS status**

DELIVERED LEFT WITH INDIVIDUAL [details] (/business/service-of-process/Home/USPSStatusDetails/307069)

**City/State/Zip**

BROOKFIELD, CT 06804

**Was delivered**

Yes

**Staff comment**

**Signature image**

View image (/business/service-of-process/Home/ViewImage/4cb73438-cae2-ed11-a9da-00155d636723)

Please note: USPS requires a signature whenever certified mail is returned to sender. When mail from the Secretary of State is returned, it is processed and signed by the state's central mailing office. If your mail was intended for a private entity (that is, anyone other than a state officer or agency) and the signature below is that of **Adam Robinson, Central Mailing Office, Danny Pauley, Jim Carter, Ronald Kushner or State of West Virginia**, then your mail was *NOT DELIVERED* and will be returned to the clerk of the appropriate court.

Home (http://www.sos.wv.gov/pages/default.aspx) | Contact Us (http://www.sos.wv.gov/Pages/contact-us.aspx) | Site Map (http://www.sos.wv.gov/Pages/sitemap.aspx) | Disclaimer (http://www.sos.wv.gov/Pages/content-disclaimer.aspx)

Defendant details

west virginia   (http://www.wv.gov)

Privacy, Security and Accessibili

State Agency Directory (http://www.wv.gov/Pages/agencies.aspx) | Online Services (http://www.wv.gov/Pages/services.aspx)

EXHIBIT 4

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

RORY L. PERRY II
110 N Heber Street
Suite 119
Beckley, WV 25801



FILED

APR 1 7 2023

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

| | |
|---|---|
| **Control Number:** 307069 | **Agent:** STEVE ZANK |
| **Defendant:** EASTERN ACCOUNT SYSTEM OF CONNECTICUT, INC. 111 PARK RIDGE ROAD BROOKFIELD, CT 06804 US | **County:** Federal |
| | **Civil Action:** 5:23-CV-00238 |
| | **Certified Number:** 92148901125134100003783750 |
| | **Service Date:** 4/12/2023 |

I am enclosing:

**1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in the name and on behalf of your corporation.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in the name and on behalf of your corporation as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office.***

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

Case 3:25-mc-00012-OAW    Document 12    Filed 03/13/25    Page 35 of 152
Case 5:23-cv-00238    Document 4    Filed 04/17/23    Page 2 of 3 PageID #: 29
Case 5:23-cv-00238    Document 2    Filed 03/28/23    Page 1 of 2 PageID #: 18

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of West Virginia

| | |
|---|---|
| MICHAEL SHERIDAN | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. 5:23-cv-00238 |
| EASTERN ACCOUNT SYSTEM OF | ) |
| CONNECTICUT, INC, | ) |
| EQUIFAX INFORMATION SERVICES, LLC, and | ) |
| TRANS UNION, LLC | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

EASTERN ACCOUNT SYSTEM OF CONNECTICUT, INC.
C/O STEVE ZANK
111 PARK RIDGE RD
BROOKFIELD, CT, 06804

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

BENJAMIN M. SHERIDAN & JED R. NOLAN
3566 TEAYS VALLEY RD.
HURRICANE, WV 25526

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:    3/28/2023                                            s/Rory L. Perry

                                                             *Signature*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 5:23-cv-00238

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                              *Server's signature*

                                         _____
                                              *Printed name and title*


                                         _____
                                              *Server's address*

Additional information regarding attempted service, etc:

EXHIBIT 5

You are viewing this page over a secure connection. Click here for more information.

## West Virginia Secretary of State — Online Data Services

### Business and Licensing

Online Data Services Help

### Business Organization Detail

*NOTICE: The West Virginia Secretary of State's Office makes every reasonable effort to ensure the accuracy of information. However, we make no representation or warranty as to the correctness or completeness of the information. If information is missing from this page, it is not in the The West Virginia Secretary of State's database.*

## EASTERN ACCOUNT SYSTEM OF CONNECTICUT, INC.

### Organization Information

| Org Type | Effective Date | Established Date | Filing Date | Charter | Class | Sec Type | Termination Date | Termination Reason |
|---|---|---|---|---|---|---|---|---|
| C \| Corporation | 7/24/2009 | | 7/24/2009 | Foreign | Profit | | | |

### Organization Information

| | | |
|---|---|---|
| **Business Purpose** | 5614 - Admin/Support Waste Mgt/Remediation Services - Administrative and Support Services - Business Support Services (document prep, call centers, telemarketing, collection agencies, credit, repossession, court reporting, stenotype) | **Capital Stock** |
| **Charter County** | | **Control Number**    99FSS |
| **Charter State** | CT | **Excess Acres** |
| **At Will Term** | | **Member Managed** |

| At Will Term Years | | Par Value | |
|---|---|---|---|
| Authorized Shares | 0 | Young Entrepreneur | Not Specified |

## Addresses

| Type | Address |
|---|---|
| Mailing Address | 111 PARK RIDGE RD<br>BROOKFIELD, CT, 06804<br>USA |
| Notice of Process Address | STEVE ZANK<br>111 PARK RIDGE RD<br>BROOKFIELD, CT, 06804 |
| Principal Office Address | 111 PARK RIDGE RD<br>BROOKFIELD, CT, 06804<br>USA |
| Type | Address |

## Officers

| Type | Name/Address |
|---|---|
| Director | LAURA J. COURTNEY<br>111 PARK RIDGE RD<br>BROOKFIELD, CT, 06804 |
| President | JOSEPH P COURTNEY JR<br>111 PARK RIDGE RD<br>BROOKFIELD, CT, 06804 |
| Type | Name/Address |

WV SOS - Business and Licensing - Corporations - Online Data Services

## Annual Reports

| Filed For |
| --- |
| 2023 |
| 2022 |
| 2021 |
| 2020 |
| 2019 |
| 2018 |
| 2017x |
| 2017 |
| 2016 |
| 2015 |
| 2014 |
| 2013 |
| 2012 |
| 2011 |
| Date filed |

For more information, please contact the Secretary of State's Office at 304-558-8000.

Saturday, July 15, 2023 — 6:32 PM

© 2023 State of West Virginia

# EXHIBIT 6


**UNITED STATES POSTAL SERVICE.**

Date Produced: 04/24/2023

WEST VIRGINIA SECRETARY OF STATE:

The following is the delivery information for Certified Mail™/RRE item number 9214 8901 1251 3410 0003 7837 50. Our records indicate that this item was delivered on 04/17/2023 at 11:46 a.m. in BROOKFIELD, CT 06804. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number:        378375

# EXHIBIT 7

# USPS Tracking®

FAQs >

**Tracking Number:**                                                                    Remove ✕

## 92148901125134100003783750

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to an individual at the address at 11:46 am on April 17, 2023 in BROOKFIELD, CT 06804.

**Get More Out of USPS Tracking:**

  **USPS Tracking Plus®**

**Delivered**
**Delivered, Left with Individual**
BROOKFIELD, CT 06804
April 17, 2023, 11:46 am

**In Transit to Next Facility**
April 16, 2023

**Departed USPS Regional Destination Facility**
WHITE PLAINS NY DISTRIBUTION CENTER

Feedback

April 15, 2023, 11:02 pm

**Arrived at USPS Regional Destination Facility**
WHITE PLAINS NY DISTRIBUTION CENTER
April 15, 2023, 6:25 am

**Pre-Shipment Info Sent to USPS, USPS Awaiting Item**
April 12, 2023

**Hide Tracking History**

---

**Text & Email Updates**                                                              ⌄

---

**Return Receipt Electronic**                                                         ⌄

---

**USPS Tracking Plus®**                                                                ⌄

---

**Product Information**                                                                ⌄

---

See Less ⌃

Track Another Package

Enter tracking or barcode numbers

USPS.com® - USPS Tracking® Results

# Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

# EXHIBIT 8

UNITED STATES DISTRICT COURT                                    SOUTHERN DISTRICT OF WEST VIRGINIA

Michael Sheridan

                              Plaintiff,                Court File Number
                                               5:23-cv-00238

v.

                                             AFFIDAVIT OF SERVICE

Easterm Account System of Connecticut, Inc., et al.
                              Defendants,

State of Connecticut }
County of Hartford    } SS

I, __Theresa Barnes__ , state that on
    (Name of Server)

__1 / 29__ /2024 at __12:15P__ M, I served the:
(Date of Service)      (Time of Service)

    Proposed Order; Post Hearing Brief as Files; Exhibit 1 for Filing; Letter Re: Credit
    Profile; Rate Genius Car Financing Ad; Fair Debt Collection Text; Declaration of Jed R.
    Nolan; Order Following Hearing on Damage; Judgment Order; Jefferson County Order;
    Affidavit of Matthew Stonestreet

upon: Steven Richard Zank

therein named, personally at:    27 Cedar Lane Ext
                                   Sherman, CT 06784

by handing to and leaving with Steven Richard Zank, a true and correct copy thereof.

        Male, white, bald, 49, 6', 170 lbs

I declare under penalty of perjury that this information is true.

                              Dated: __2/ 1__ /2024



                                            (Signature of Server)

                                            Theresa Barnes
                                            (Printed Name of Server)

* Service was completed by an independent contractor retained by Metro Legal Services, Inc.

Serial # KLESH 294776 1415

Re: Zank

METRO LEGAL
legal support specialists since 1969

616 South 3rd Street
Minneapolis, MN 55415
(800) 488-8994
www.metrolegal.com

# EXHIBIT 9

 State Agency Directory | Phone Directory | Online Services

Businesses | Individuals | Resources | Property Tax | Taxpayer Advocate | About Us



# WEST VIRGINIA
# TAX DIVISION

## Collection Agency Master List

This listing is valid as of 03-05-2025, according to the information known by the Tax Division at this time.

Search:

○ All Collection Agency Names

◉ Full or Partial Collection Agency Name:

    eastern account

Go Search

1 Result Found

EASTERN ACCOUNT SYSTEM OF CONNECTICUT, INC.
75 GLEN RD
SANDY HOOK   CT   06482-1170

Copyright 2025 State of West Virginia. All Rights Reserved.

Tax Information and Assistance: (304) 558-3333 or (800) 982-8297
1001 Lee Street East | Charleston, WV 25301
Site Map | Department of Revenue | MyTaxes
Privacy, Security and Accessibility | WV.Gov | USA.Gov | © 2025 State of West Virginia

# EXHIBIT 10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**Beckley Division**

**MICHAEL SHERIDAN,**
    **Plaintiff,**

v.                                                                          **Civil Action No. _____**

**EASTERN ACCOUNT SYSTEM OF CONNECTICUT, INC,**
**EQUIFAX INFORMATION SERVICES, LLC, and**
**TRANS UNION, LLC,**
    **Defendants.**

## COMPLAINT

In this case, which is representative of numerous others, Defendants Equifax Information Services, LLC ("Equifax") and TransUnion, LLC ("TransUnion"), together with the furnisher, Eastern Account Systems of Connecticut, Inc., failed to conduct a proper investigation of Plaintiff Michael Sheridan's dispute. The case arises out of an alleged debt obligation which was already litigated thoroughly in arbitration with Frontier Communications. In the Frontier arbitration, Mr. Sheridan's claims were vindicated, and he was awarded hundreds of dollars from Frontier for this account, and over $100,000 in fees and costs. However, despite multiple requests for reinvestigation and correction by Mr. Sheridan, Defendants failed to reasonably investigate his disputes and continued to inaccurately report that he had a delinquency owed to Frontier on his credit report. Mr. Sheridan repeatedly alerted Defendants that his file contained inaccurate information, but Defendants failed to ensure the accuracy of his credit information. Defendants' false reporting caused continuous injury to Plaintiff. Plaintiff brings this action for actual, statutory, and punitive damages, and for costs and attorney's fees, pursuant to 15 U.S.C. § 1681 et seq. ("Fair Credit Reporting Act" or "FCRA").

## PARTIES

1.      Plaintiff Michael Sheridan ("Plaintiff" or "Mr. Sheridan") is a resident of Greenbrier County, West Virginia, which is within the territorial confines of the Southern District of West Virginia. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

2.      (a)     Defendant Equifax Information Services, LLC ("Equifax") is a corporation registered to do business in West Virginia, with its principal office in Georgia.

        (b)     Defendant Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

        (c)     Equifax disburses such consumer reports to third parties under contract for monetary compensation.

3.      Defendant Eastern Account System of Connecticut, Inc. ("EASC") is a corporation having its principal offices in 111 Park Ridge Road in Brookfield, Connecticut, and which does business in West Virginia. Defendant EASC furnishes information to credit reporting agencies regarding an alleged account owed by Plaintiff.

4.      (a)     Defendant Trans Union LLC (Trans Union), is an Illinois corporation registered to do business in West Virginia, with its principal office address located at 555 West Adams, Chicago, IL 60661.

        (b)     Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

(c)     Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

## JURISDICTION

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

## STATEMENT OF FACTS

5.      Plaintiff Michael Sheridan resides in the Greenbrier County, WV.

### Plaintiff's Initial Efforts to Fix Credit Reporting Issues

6.      On or about May 2, 2019, Plaintiff's received the arbiter's 38-page reasoned decision on his years-long case regarding unfair and deceptive acts and practices in conjunction with Frontier's provision of internet service.

7.      In this order, Judge Brewer, the arbitrator selected by American Arbitration Association to adjudicate the claims, ruled that Frontier had committed unfair and deceptive acts and practices over a three-year period in its bill and services to Plaintiff.

8.      Mr. Sheridan was awarded damages as well as fees and costs in that matter.

9.      In or about October 2020, Plaintiff learned that his credit report contained collection entries regarding Frontier's attempt to collect the same account for which they had been found to have committed unfair and deceptive practices in the administration of for a three-year period.

10.     The collection efforts were undertaken by a third-party collection agency, Defendant EASC.

11.     Plaintiff's counsel reported the issue to Frontier's counsel but heard nothing back on the issue.

12.     Thereafter, EASC continued to dun Mr. Sheridan's credit report.

13.      Mr. Sheridan sent several disputes to the credit bureaus, including one in or about October 2020 and again in December of 2022.

14.      Plaintiff disputed the false tradeline by mailing letters to Experian, Equifax, and TransUnion via certified mail, return receipt requested.

15.      Defendant Equifax requested additional identifying information from Plaintiff in order to process his dispute in December of 2022.

16.      Plaintiff promptly provided documentation to confirm his identity to the Defendant.

17.      However, Defendant Equifax did not correct Plaintiff's credit disclosure.

18.      Upon information and belief, all three credit bureaus relayed the dispute letter and its contents to Defendant EASC as required by the FCRA.

19.      Instead, Defendants incorrectly confirmed that Plaintiff owed an account that had been adjudicated in 2019 in Mr. Sheridan's favor.

20.      As a result of the Defendant's false credit entries, Mr. Sheridan was forced to pay an excessive interest rate on a recent car purchase.

21.      Experian removed the incorrect account information, but both Equifax and TransUnion confirmed the reporting and left the false information on Plaintiff's credit report.

22.      Despite this internally conflicting information, Defendants never undertook any steps to investigate, identify, or correct possible inaccuracies in its reporting on Plaintiff's credit following his dispute.

23.      Defendants included this information in Plaintiff's credit report due to their lax threshold designed to over-include information in consumer reports.

24.    These derogatory and mismatched sets of credit information severely reduce Plaintiff's credit score and cause him harm, including being forced to pay a inflated interest rate on a new car purchase.

## Damage

25.    Defendants have failed and refused to perform a meaningful and searching inquiry into the substance of Plaintiff's dispute and to accurately report Plaintiff's credit line relating to his credit.

26.    After sending their Investigation Results to Plaintiff, Defendants prepared and published to third parties multiple inaccurate consumer reports about Plaintiff that contained the inaccurate derogatory credit information.

27.    As the result of Defendants' conduct, Plaintiff has suffered loss of credit; loss of the ability to purchase and benefit from credit; increased insurance rates; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

## COUNT ONE:
### (Violation of 15 U.S.C. § 1681i)
### FAILURE TO REINVESTIGATE

28.    Plaintiff incorporates all of the preceding paragraphs by reference.

29.    Defendants Equifax and TransUnion failed to conduct a reasonable reinvestigation of the information in Plaintiff's credit file after receiving actual notice of inaccuracies; failed to delete inaccurate information upon actual notice of inaccuracies; failed to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and relied upon verification from a source it has reason to know is unreliable, in violation of 15 U.S.C. § 1681i.

30.     Defendants' conduct, action, and inaction were willful, or, in the alternative, negligent.

31.     As a result of Defendants' action and inaction, the Plaintiff suffered actual damages, including but not limited to damage to his credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a)     Appropriate statutory penalties for each violation of the FCRA;

(b)     Actual damages;

(c)     Punitive damages;

(d)     Reasonable attorney's fees and the costs of this litigation;

(e)     Pre-judgment and post-judgment interest at the legal rate;

(f)     Appropriate equitable relief, including the correction of Plaintiff's credit score; and

(g)     Such other relief as the Court deems equitable, just, and proper.

## COUNT TWO:
### (Violation of 15 U.S.C. § 1681e(b))
### FAILURE TO ASSURE ACCURACY

32.     Plaintiff incorporates all of the preceding paragraphs by reference.

33.     Defendants Equifax and TransUnion failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files maintained and published concerning Plaintiff, in violation of 15 U.S.C. § 1681e(b).

34.     Defendants' conduct, action, and inaction were willful, or, in the alternative, negligent.

35.     As a result of Defendants' action and inaction, the Plaintiff suffered actual damages, including but not limited to damage to his credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Appropriate statutory penalties for each violation of the FCRA;

(b) Actual damages;

(c) Punitive damages;

(d) Reasonable attorney's fees and the costs of this litigation;

(e) Pre-judgment and post-judgment interest at the legal rate;

(f) Appropriate equitable relief, including the correction of Plaintiff's credit score; and

(g) Such other relief as the Court deems equitable, just, and proper.

**COUNT THREE:**
**(Violation of 15 U.S.C. § 1681i(a)(5))**
**REPORTING INFORMATION WHICH IT CANNOT VERIFY**

36.     Plaintiff incorporates all of the preceding paragraphs by reference.

37.     Defendants Equifax and TransUnion failed to delete the false tradelines from the credit report and credit files maintained and published concerning Plaintiff after a reinvestigation would have found the data to be unverifiable, in violation of 15 U.S.C. § 1681i(a)(5).

38.     Defendants' conduct, action, and inaction were willful, or, in the alternative, negligent.

39.     As a result of Defendants' action and inaction, the Plaintiff suffered actual damages, including but not limited to damage to his credit rating, lost opportunities to enter into

consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

WHEREFORE, Plaintiff respectfully requests the following relief:

(a) Appropriate statutory penalties for each violation of the FCRA;

(b) Actual damages;

(c) Punitive damages;

(d) Reasonable attorney's fees and the costs of this litigation;

(e) Pre-judgment and post-judgment interest at the legal rate;

(f) Appropriate equitable relief, including the correction of Plaintiff's credit score; and

(g) Such other relief as the Court deems equitable, just, and proper.

**COUNT FOUR:**
**(Violation of 15 U.S.C. § 1681s-2(b))**
**EASC**

40. Plaintiff incorporates all of the preceding paragraphs by reference.

41.   On one or more occasions within the past two years, by example only and without limitation, EASC violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

42.   On one or more occasions, Defendant violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(B), by failing to review all relevant information provided by the consumer reporting agencies.

43.   When the Plaintiff mailed disputes to the consumer reporting agencies ("CRAs"), the CRAs used a dispute system named "e-Oscar," which has been adopted by the credit reporting agencies and by their furnisher-customers such as EASC.  It is an automated system, and the procedures used by the CRAs are systemic and uniform.

44.     Defendants failed to review all relevant information provided by credit reporting agencies pursuant to section 1681i(a)(2) of this title.

45.     Defendants failed to conduct a reasonable investigation with respect to the disputed information.

46.     As a result of this conduct, action and inaction of Defendants, Plaintiff suffered actual damages including, without limitation, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

47.     Defendants' conduct, action and inactions were and continue to be willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendants have been negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

48.     As a result of the conduct, action, and inaction of Defendants, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

49.     Plaintiff requests all creditors who denied Plaintiff's loan be advised that the debt was not valid.

50.     The Plaintiff is entitled to recover costs and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**Plaintiff,**
**MICHAEL SHERIDAN,**
**By Counsel**

**/s/ Benjamin M. Sheridan**
Benjamin M. Sheridan (# 11296)
Jed R. Nolan (#10833)

**Klein & Sheridan, LC**
3566 Teays Valley Road
Hurricane, WV 25526
T: (304) 562-7111
F: (304) 562-7115

E: ben@kleinsheridan.com
E: jed@kleinsheridan.com

*Counsel for Plaintiff*

# EXHIBIT 11

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
## Fort Worth Division

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| _____Delisa M Harris_____ | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. _4:23-cv-00512-P_____ |
| | § | |
| | § | |
| | § | |
| _____Eastern Account System Inc_____ | § | |
| Defendant | § | |

## CLERK'S ENTRY OF DEFAULT

The record reflects that service of the complaint has been made upon the Defendant named below:

Eastern Account System Inc doing business as E-Center

_____

It appears from the record that service of the complaint has been made, that the Defendant has failed to answer or otherwise defend as directed within the time allowed, and that the Plaintiff has shown that failure through affidavit or otherwise.

Therefore, upon Plaintiff's request, DEFAULT is entered against the Defendant named above.

KAREN S. MITCHELL, CLERK
U.S. DISTRICT COURT


s/ M. Wills_____
By: Deputy Clerk on 7/17/2023

Case 1:22-cv-01263-TWP-MG   Document 13   Filed 12/16/22   Page 1 of 1 PageID #: 77

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| Meagan Harden,<br><br>          Plaintiff,<br><br>v.<br><br>Eastern Account System of Connecticut,<br>Inc.,<br><br>          Defendant. | 1:22-cv-1263-TWP-MG |

**DEFAULT JUDGMENT**

Defendant, Eastern Account Systems of Connecticut, Inc., having failed to plead or otherwise defend in this action, and having an entry of default been entered against it, and Plaintiff, having filed its Motion for Default pursuant to Fed.R.Civ.P. 55; it is hereby **ORDERED, ADJUDGED, AND DECREED** that Defendant, Eastern Account Systems of Connecticut, Inc., be held in Default, that Judgment be entered against the Defendant as to liability. Plaintiff seeks damages, costs, and attorney's fees. Damages shall be resolved at a virtual hearing on <u>February 17, 2023 at 9:00 a.m. EST</u>. Connection information will be sent by separate email from the Courtroom Deputy Clerk.

Date: 12/16/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

**Copies by U.S. mail to:**
Eastern Account System of Connecticut, Inc.
c/o Registered Agent Patrick Jones
334 N Senate Avenue
Indianapolis, IN 466204

Eastern Account System of Connecticut, Inc.
111 Park Ridge Road
Brookfield, CT 06804

Distribution to all electronically
registered counsel of record via
CM/ECF

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MEAGAN HARDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-01263-TWP-MG |
| | ) | |
| EASTERN ACCOUNT SYSTEM OF | ) | |
| CONNECTICUT, INC. Default Judgment entered | ) | |
| on 12/16/2022, | ) | |
| | ) | |
| Defendant. | ) | |

### ENTRY DIRECTING FINAL JUDGMENT

Pursuant to the Court's Default Judgment, Defendant Eastern Account System of Connecticut, Inc., was held in Default, and Judgment was entered against the Defendant as to liability. At the February 17, 2023 virtual hearing as to Plaintiff Meagan Harden's damages, costs, and attorney's fees, Plaintiff Meagan Harden was awarded $1,500.00 in damages and $4,444.10 in attorney's fees and costs.

All claims having now been resolved in this action in favor of Plaintiff Meagan Harden and against Defendant Eastern Account System of Connecticut, Inc., for a total award of **$5,944.10**.

Final Judgment will be issued in a separate filing.

Dated: 2/21/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Thomas E. Irons
SAWIN & SHEA, LLC
tirons@sawinlaw.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

MEAGAN HARDEN,                                )
                                             )
                  Plaintiff,                  )
                                             )
        v.                                    )   No. 1:22-cv-01263-TWP-MG
                                             )
EASTERN ACCOUNT SYSTEM OF                     )
CONNECTICUT, INC. Default Judgment entered    )
on 12/16/2022,                                )
                                             )
                  Defendant.                  )

### FINAL JUDGMENT PURSUANT TO FED. R. CIV. PRO. 58

The Court having this day made its Entry directing the entry of final judgment, now hereby

enters FINAL JUDGMENT.

Plaintiff, Meagan Harden, is awarded $1,500.00 in damages and $4,444.10 in attorney's

fees and costs.

IT IS SO ORDERED.

DATED: 2/21/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Roger A.G. Sharpe, Clerk of Court

By: _____
        Deputy Clerk

Distribution:

Thomas E. Irons
SAWIN & SHEA, LLC
tirons@sawinlaw.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

**STEVEN FEDORCHUK**,

Civ. No.: 6:22-cv-6272-CJS

    Plaintiff,

    v.

**EASTERN ACCOUNT SYSTEM OF
CONNECTICUT, INC.**,

    Defendant.

### ENTRY OF DEFAULT

It appearing that Defendant

    Eastern Account System of Connecticut, Inc.

is in Default for failure to appear or otherwise defend as required by law, Default is hereby entered

as against said defendant on this day of ____8/4/2022_____.

Mary C. Loewenguth
Clerk of Court
United States District Court

By:_ Tricia M. Frisa_____
Deputy Clerk

1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIE TOWLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:22-CV-204-RAH |
| | ) | [WO] |
| EASTERN ACCOUNT SYSTEM OF | ) | |
| CONNECTICUT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter comes before the Court on Plaintiff Willie Towles's Motion for Default Judgment against Defendant Eastern Account System of Connecticut, Inc. (EASC). For the following reasons, Towles's motion is due to be GRANTED and a judgment entered against EASC in the amount of **$10,014.80**.

## I. PROCEDURAL BACKGROUND

On April 27, 2022, Towles filed this civil action against EASC, alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692 *et seq*. Towles's Complaint alleges EASC violated the FDCPA in connection with collecting a debt by furnishing inaccurate information to a consumer reporting agency. Specifically, Towles contends that EASC is erroneously reporting a WOW Cable account as disputed on his TransUnion credit report when he previously had contacted EASC in November 2021 through counsel and instructed EASC to remove

1

the designation that the debt was disputed. He claims that this false reporting is impacting his ability to obtain and refinance a mortgage and that he has suffered from anxiety, embarrassment, humiliation, and stress from EASC's actions. Due to EASC's alleged violations of 15 U.S.C. § 1692e, Towles claims he is entitled to actual damages, statutory damages in the amount of $1,000, and his reasonable attorney's fees and costs.

When EASC failed to file a timely answer, Towles filed a Request for Entry of Clerk's Default pursuant to Fed. R. Civ. P. 55(a). (Doc. 6.) In the proof of service referenced in the motion, the process server declared that on June 29, 2022, she served the summons and complaint on EASC's registered agent for service in Alabama, CT Corporation. (Doc. 6.) The Clerk of Court granted the entry of default against EASC on August 28, 2022, and Towles later filed a Motion for Default Judgment against EASC. (Docs. 10, 13.) On December 1, 2022, Towles supplemented his motion with additional evidence concerning his damages. (Doc. 17.) To date, EASC has failed to respond in any form to the Complaint or Towles's motion.

## II. DISCUSSION

### A. Jurisdiction and Service

For a default judgment to be valid, the court must have personal and subject matter jurisdiction over the defendant. *Rash v. Rash*, 173 F.3d 1376, 1380–81 (11th

2

Cir. 1999). Thus, "[w]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (internal citation omitted); *see also Osborn v. Whites & Assocs. Inc.*, No. 120CV02528TWTAJB, 2021 WL 3493164, at *2 (N.D. Ga. May 20, 2021). In this action, the Court clearly has subject matter jurisdiction over Towles's FDCPA claim because it is a federal claim. 15 U.S.C. § 1692k(d); 28 U.S.C. § 1331.

The Court also must determine whether it retains personal jurisdiction over EASC. *See Sys. Pipe*, 242 F.3d at 324 (finding no error when district court inquired into personal jurisdiction over parties *sua sponte* before rendering entry of default judgment). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (internal citation omitted). A federal court's exercise of personal jurisdiction over a defendant requires (1) a finding that the procedural requirements of service of summons have been met and (2) a determination of whether the relationship between the defendant and the forum is constitutionally sufficient. *Brink's Mat Ltd. v. Diamond*, 906 F.2d 1519, 1521 (11th Cir. 1990).

Here, Towles served the summons and complaint on the CT Corporation, which is EASC's registered agent for service in Alabama. This is sufficient service upon EASC under Fed. R. Civ. P. 4(h)(1)(B).

The relationship between EASC and the forum state must also be constitutionally sufficient to establish personal jurisdiction. *See Brink's Mat.*, 906 F.2d at 1521. The due process clause of the Fourteenth Amendment requires that the defendant have certain "minimum contacts" with the forum state, such that the maintenance of this suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008). A court may exercise specific jurisdiction over a defendant when a claim arises from or relates to conduct purposely directed at a forum state, or a court may exercise general jurisdiction over a defendant when the defendant has maintained systematic and continuous contacts with the forum state. *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1057 (11th Cir. 1986).

When determining whether to exercise specific jurisdiction over a defendant, a court must find that the defendant's contacts with the forum relate to the underlying cause of action or the facts giving rise to it, "involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws," and are such "that the

4

defendant should reasonably anticipate being [hailed] into court in the forum." *Bank of Am. v. Patel*, 764 F. Supp. 2d 1285, 1289 (M.D. Ala. 2010) (citing *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993)). Jurisdiction does not necessarily require that a defendant physically enter the state, as "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

The Court finds that EASC's contacts with Alabama warrant the exercise of specific jurisdiction over EASC. In his Complaint, Towles, an Alabama resident, alleges that EASC is a debt collector, has reported to credit bureau TransUnion inaccurate information concerning a consumer cable debt owed by Towles to WOW Cable, has refused to remove or investigate and correct the inaccurate information, and has continued to furnish the disputed information to a consumer reporting agency. These actions show direct contact with an Alabama resident and his debt and purposeful availment of Alabama's laws through engaging in debt collection in the state. Furthermore, by refusing to remove the erroneous information from Towles's credit despite being informed of the error, EASC allegedly (1) engaged in conduct the natural consequence of which was to embarrass, annoy, and humiliate Towles in connection with the collection of a debt, and (2) engaged in false, deceptive, or misleading representations in connection with the collection of this

debt by reporting credit information which EASC knew or should have known to be false. The Court also notes that EASC maintains a registered agent in Alabama. These actions show that EASC should reasonably anticipate being summoned to court in the state.

The facts alleged in the Complaint and those discussed *supra* establish that EASC purposefully availed itself of the privilege of conducting activities in Alabama and there is a sufficient nexus between those contacts and this litigation. Because this showing has been made, the "defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010) (citing *Burger King*, 471 U.S. at 477; *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 858–59 (11th Cir. 1990)). Given the fact that EASC has not responded in any way to this lawsuit, it is apparent that EASC has not offered any compelling reasons for finding that personal jurisdiction in Alabama would be unreasonable. For all these reasons, the Court finds that the exercise of personal jurisdiction comports with due process requirements.

## B. Default Judgment Legal Standard

The entry of a default judgment is appropriate when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend and

that fact is made to appear by affidavit or otherwise. Fed. R. Civ. P. 55(a). A party's failure to appear and the clerk's subsequent entry of default does not in itself warrant the court's entry of a default judgment. A default judgment may only be entered "when there is 'a sufficient basis in the pleadings for the judgment entered'"—that is, whether it could "survive a motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (quoting *Nishimatsu Constr. Co. Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). In deciding whether the allegations in the complaint are well pleaded, the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted). Instead, the "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* A defaulted defendant is deemed to admit "the plaintiff's well-pleaded allegations of fact," but not facts that are not well-pleaded or conclusions of law. *Nishimatsu*, 515 F.2d at 1206. Once a court finds entry of default judgment appropriate, it may then determine the amount and character of recovery that should be awarded. *See Virgin Recs. Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593 (S.D. Ala. 2007).

## C. Towles's Claims

"The FDCPA does not ordinarily require proof of intentional violation and, as

7

a result, is described by some as a strict liability statute." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (citing 15 U.S.C. §1692k; *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010)). "[A] single violation of the statute is sufficient to establish civil liability." *Edwards v. Niagara Credit Sols., Inc.*, 586 F.Supp.2d 1346, 1357 (M.D. Ga. 2008). Towles has asserted several apparently viable violations of the FDCPA—in particular, violations of 15 U.S.C. § 1692e. However, the available statutory damages cannot exceed $1,000 per lawsuit, "regardless of how many times a defendant violates the FDCPA." *Bishop v. I.C. Sys., Inc.*, 713 F.Supp.2d 1361, 1368 (M.D. Fla. 2010) (citing 15 U.S.C. § 1692k(a); *Harper v. Better Bus. Servs., Inc.*, 961 F.2d 1561, 1563 (11th Cir. 1992)).

To prevail on an FDCPA claim, a plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Meyer v. Fay Servicing, LLC*, 385 F. Supp. 3d 1235, 1243 (M.D. Fla. 2019) (internal quotation and citations omitted).[1] Towles is able to satisfy the first and second elements because the Complaint's allegations and Towles's declarations establish that EASC is a business

---

[1] The FDCPA defines a debt collector in relevant part as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

who regularly operates as a third-party debt collector, is a "debt collector" as defined

by the FDCPA, reported to credit bureau TransUnion that Towles owed a consumer

debt, and despite Towles's notification of an error, continues to report the debt as

disputed.  While claims concerning communications between debt collectors and

credit bureaus are more commonly asserted under the Fair Credit Reporting Act, 15

U.S.C. § 1681 *et seq.*, failure to communicate to a credit bureau that a debt is

disputed may subject debt collectors to an action under the FDCPA.  *See Acosta v.

Campbell*, No. 6:04CV761ORL28DAB, 2006 WL 146208, at *13–14 (M.D. Fla.

Jan. 18, 2006) (citing *In re Creditrust Corp.*, 283 B.R. 826, 832 (Bankr. D. Md.

2002); *Ryan v. Wexler & Wexler*, 113 F.3d 91, 92 (7th Cir. 1997); *Semper v. JBC

Legal Group*, 2005 WL 2172377, *3 (W.D. Wash. Sept. 6, 2005)).

The Court also finds that Towles is able to satisfy the final element—that

EASC engaged in an act or omission prohibited by the FDCPA. Towles brings his

FDCPA claim against EASC based on § 1692e(2)(A) and § 1692e(8) of the FDCPA.

These sections of the Act provide:

> A debt collector may not use any false, deceptive, or misleading
> representation or means in connection with the collection of any debt.
> Without limiting the general application of the foregoing, the following
> conduct is a violation of this section:
>
>> (2)  The false representation of . . . (A) the character, amount, or
>> legal status of any debt; . . .
>
>> (8) Communicating or threatening to communicate to any person
>> credit information which is known or which should be known to

9

          be false, including the failure to communicate that a disputed
          debt is disputed.

15 U.S.C. §§ 1692e(2)(A), (8).

    The Complaint alleges that EASC falsely reported and continued to report to TransUnion that Towles disputed a consumer debt owed to WOW Cable even after Towles had informed EASC that he no longer disputed the debt.  Towles further alleges that this continued reporting constituted a false representation concerning the character and legal status of the debt, and accordingly, that EASC has communicated and continued to communicate to TransUnion information that it knows to be false. Due to EASC's failure to plead or otherwise contest these allegations, these allegations are assumed as true.  Thus, EASC's alleged false statements about Towles's debt violated Section 1692e.

    For these reasons, the Court concludes that Towles's Motion for Default Judgment is due to be granted on Towles's FDCPA claim against EASC.

**D. Damages, Costs, and Attorney's Fees**

    As a result of EASC's illegal acts, Towles seeks actual damages in the amount of $5,000, statutory damages in the amount of $1,000.00, costs, and attorney's fees in the amount of $10,530 pursuant to 15 U.S.C. § 1692k.

    A court considering a party's application for default judgment may conduct an evidentiary hearing if "it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D)

10

investigate any other matter." Fed. R. Civ. P. 55(b)(2). If an evidentiary hearing or other proceedings are necessary in order to determine what the judgment should provide, such as the amount of damages that the defaulting defendant must pay, those proceedings must be conducted before the judgment is entered. *S.E.C. v. Smyth*, 420 F.3d 1225, 1231–32 (11th Cir. 2005) (citing *Lowe v. McGraw–Hill Cos.*, 361 F.3d 335, 339–40 (7th Cir. 2004)). However, a hearing is not necessary if sufficient evidence is submitted to support the request for damages. *Id.* at 1232 n.13 (finding that "hearings are required in all but 'limited circumstances' ... [such] as when the district court already has a wealth of evidence from the party requesting a hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages").

The Court has before it two declarations from Towles, several credit reports, and correspondence sent to EASC on behalf of Towles. The Court finds that an evidentiary hearing is unnecessary as there is sufficient evidence to support an award of damages.

### i. Actual Damages

Under the FDCPA, a plaintiff may recover "any actual damage" sustained as a result of a violation of the statute. 15 U.S.C. § 1692k(a)(1). Towles requests $5,000 in actual damages for injury caused by EASC's failure to comply with its statutory duties. Specifically, Towles states that, because of EASC's actions, he has suffered

11

stress, embarrassment, humiliation, frustration, loss of sleep, and loss of weight. He also claims to have seen a therapist because of the stress and that he has been unable to buy a house. Such damages may be recoverable as actual damages for violations of the FDCPA. *See Minnifield v. Johnson & Freedman, LLC*, 448 F. App'x 914, 916 (11th Cir. 2011); *Carrigan v. Cent. Adjustment Bureau, Inc.*, 502 F. Supp. 468, 470–71 (N.D. Ga. 1980) (concluding that defendant in FDCPA suit could be liable for plaintiff's emotional distress and anguish).

While Towles's claimed actual damages are somewhat vague, nonspecific, and lack documentary support, the Court concludes that Towles has provided enough detail to show that an award of actual damages is appropriate. The Court determines that damages in the amount of $3,500 are appropriate as a result of EASC's FDCPA violation.

### ii. Statutory Damages

The FDCPA allows statutory damages beyond actual damages in an amount not to exceed $1,000. 15 U.S.C. §1692k(a)(2)(A). Statutory damages are limited to $1,000 per action, as opposed to per violation, improper communication, or alleged debt. *Harper v. Better Bus. Servs., Inc.*, 961 F.2d 1561, 1563 (11th Cir. 1992). Factors to be considered in determining the amount of statutory damages include "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."

15 U.S.C. §1692k(b)(1).

In the present case, Towles seeks statutory damages based on EACS's FDCPA violations arising from EASC's erroneous reporting to TransUnion that Towles disputed a consumer debt. According to Towles, he notified EASC via letter that it was inaccurately reporting the consumer debt as disputed, but that EASC continued to report the debt as disputed. The Complaint does not allege that EASC made any harassing or threatening phone calls or sent Towles any correspondence demanding payment on the debt, and there is no allegation or evidence that EASC's erroneous reports to TransUnion lasted for an extended period or that it actually caused Towles quantifiable financial harm. Given the relative infrequency and short duration of EASC's noncompliance, as well as the lack of egregious conduct, the Court finds that an award of maximum statutory damages is not warranted. Based on Towles's alleged facts, the Court concludes that an award of $500 in statutory damages is appropriate.

**iii. Attorney's Fees**

Towles seeks attorney's fees of $10,530. "The FDCPA authorizes an award to any successful plaintiff of the costs of the action and a 'reasonable attorney's fee as determined by the court.'" *Moton v. Nathan & Nathan, P.C.*, 297 F. App'x 930, 931 (11th Cir. 2008) (quoting 15 U.S.C. § 1692k(a)(3)). "[T]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours

13

reasonably expended on the litigation times a reasonable hourly rate." *Hollis v. Roberts*, 984 F.2d 1159, 1161 (11th Cir. 1993) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The party applying for attorney's fees is responsible for submitting satisfactory evidence to establish that the requested rate accords with the prevailing market rate and that the hours expended are reasonable. *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (addressing attorney's fees in civil rights case); *see also Hollis*, 984 F.2d at 1161 (finding principles of the civil rights fee-shifting statute to be equally applicable to Section 1692k(a)(3) of the FDCPA).

To meet the burden of proving a reasonable hourly rate, a movant may provide evidence of rates charged under similar circumstances or provide opinion evidence of reasonable rates. *Duckworth*, 97 F.3d at 1396. Regarding whether the hours expended were reasonable, a party should exclude "those hours that would be unreasonable to bill a client or opposing counsel without reference to skill, reputation, or experience," and the court should deduct "unnecessary or redundant hours" and hours spent on "discrete and unsuccessful claims" from the calculations. *Id.* at 1397. "Courts are considered experts on the reasonableness of the number of hours expended and the hourly rates requested." *Caplan v. All Am. Auto Collision, Inc.*, 36 F.4th 1083, 1090 (11th Cir. 2022).

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills,

14

experience, and reputation." *Norman v. Hous. Auth. Of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The relevant legal community is "the place where the case is filed." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quotations and citation omitted). "While the particular expertise, experience, and prestige of the attorneys may be considered, the fees are constrained by the prevailing market rates." *Ingraham v. Cap. Link Mgmt. LLC*, No. 22-CV-22691, 2022 WL 14813740, at *3 (S.D. Fla. Oct. 25, 2022). The fee applicant bears the burden of demonstrating that the rates charged are reasonable in the relevant legal community. *Norman*, 836 F.2d at 1299.

Plaintiff's counsel has submitted a declaration in which he claims a rate of $450 per hour and a detailed summary of his office's hours expended on this matter. The Court notes that Plaintiff's counsel also included the hours expended by another attorney at his office for which he claims an hourly rate of $450 per hour, paralegal time at $160 per hour, and administrative staff time at $140 per hour. As to his administrative staff, the Court notes that the time billed by his administrative staff was primarily of a clerical nature and therefore is not recoverable. *See Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1334 (M.D. Fla. 2002) ("[W]ork that is clerical or secretarial in nature is not separately recoverable.").

As to counsel's claimed rate of $450 per hour, the Court finds this excessive given what the Court knows of the prevailing rate in this area and given that Plaintiff's counsel has presented no supporting affidavits or rate information from area attorneys. *See Norman*, 836 F.2d at 1303. This Court takes note that courts in the Middle District of Alabama routinely set prevailing market rates at $350 per hour for similar legal services. As such, the Court finds the applicable rate to be $350 for Plaintiffs' counsel. However, the Court also finds that Plaintiff's counsel's paralegal rate of $160 per hour to be reasonable and within the prevailing market rate.

The Court next proceeds to review counsel's log of itemized billing. Courts are not authorized "to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Barnes*, 168 F.3d at 428. When a request for attorney's fees is unreasonably high, courts may "conduct an hour-by-hour analysis" or "reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008); *see also Procaps S.A. v. Patheon, Inc.*, 2013 WL 6238647, at *16–17 (S.D. Fla. Dec. 3, 2013) (reducing party's fee request with across-the-board cut based upon billing inefficiencies). Although courts may apply either method, they cannot apply both. *Bivins*, 548 F.3d at 1351. Finally, courts need not become "green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 837 (2011). Instead, the essential goal for the court is to "do rough justice, not to

achieve auditing perfection." *Id.*

Generally, attorneys must exercise what the Supreme Court has termed "billing judgment." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). That means they must exclude from fee applications "excessive, redundant, or otherwise unnecessary hours," which are hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Norman*, 836 F.2d at 1301 (quotations, citations, and alteration omitted). Importantly, "[i]f fee applicants do not exercise billing judgment, courts are obligated to do it for them." *Barnes*, 168 F.3d at 428. The fee applicant also bears the burden of providing specific and detailed evidence so that the court can determine the necessity and reasonableness of the time claimed for the action. *Id.* at 427. In the end, however, "exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Norman*, 836 F.2d at 1301.

The Court has reviewed counsel's billing records. Towles requests an award for a total of 12.8 hours expended by counsel and 28.15 hours by paralegals, all over the course of at least 174 entries. Although EASC has failed to object to the Motion, the Court must nonetheless ensure that counsel has exercised billing judgment in the request for fees. The Court finds that the claimed amount of time is excessive given this simple, uncontested case which involved very little legal work other than communicating with the client, drafting the summons and complaint, drafting a

motion for default judgment, supplementing that motion, and viewing orders from this Court. The Court notes that the fee log is replete with vague entries such as "file review," "redrafting," "research," "email," "administrative," "internal staff communications," interoffice file, or status updates.

Therefore, after a review of the record, the Court finds that the hours billed require adjustment. Rather than conducting an hour-by-hour analysis of the remainder of counsel's (including the paralegal's) time entries, the Court concludes an across-the-board 25% reduction to the total hours for attorney's time and 50% reduction for paralegal time incurred is warranted to discount for excessive time incurred for certain tasks and deduct for clerical tasks. *See, e.g., Shipping & Transit, LLC v. 1A Auto, Inc.*, 283 F. Supp. 3d 1290, 1306 (S.D. Fla. 2017) (adopting recommendation for a 15% reduction in fees based on billing inefficiencies); *Ovalle v. Perez*, 2017 WL 7792719, at \*4 (S.D. Fla. Nov. 9, 2017) (recommending a 10% reduction for use of block billing, redacted time entries, and redundancy in efforts); *SE Property Holdings, LLC v. Green*, 2013 WL 790902, \*6 (S.D. Ala. Mar. 1, 2013) (implementing 15% across-the-board cut in attorney's fees to account for the billing of clerical tasks and potentially excessive billings for interoffice conferences, among other issues); *Faulk v. Volunteers of Am., N. Alabama, Inc.*, No. 3:08-CV-0591-SLB, 2010 WL 11530613, at \*2 (N.D. Ala. Sept. 29, 2010) (granting

35% across-the-board cut in attorney's fee award to account for billing redundancies).

Thus, counsel should be compensated for 9.6 total hours (75% of 12.8 hours) at $350 per hour and their paralegals for 14.08 hours (50% of 28.15 hours) for $160 per hour, for a total attorney's fee of $5,612.80.

### iv. Costs

Finally, Towles seeks costs, but he fails to provide the Court with documentation or evidence of that figure. The Court has reviewed the file and notes that Towles paid a filing fee of $402.00 to initiate this lawsuit. Filing fees are recoverable costs under the FDCPA. *See Ambroise v. Am. Credit Adjusters, LLC*, No. 15-22444-CIV, 2016 WL 6080454, at *6 (S.D. Fla. Mar. 22, 2016) (concluding that filing fees are recoverable costs under 28 U.S.C. § 1920 (governing the taxation of costs by any U.S. federal judge)). The Court finds this cost to be reasonable and awards that amount to Towles.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff Willie Towles's Motion for Default Judgment is due to be **GRANTED** and that judgment be entered against Defendant in the total amount of $10,014.80. A separate judgment will issue.

**DONE**, on this the 12th day of January, 2023.

/s/ R. Austin Huffaker, Jr.
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**SCOTT EARNHART,**

    **Plaintiff,**

**v.**                                             **Case No: 8:22-cv-00980-MSS-TGW**

**EQUIFAX INFORMATION SERVICES LLC**
**and EASTERN ACCOUNT SYSTEMS OF**
**CONNECTICUT, INC.,**

**Defendants.**
_____/

### ORDER

    **THIS CAUSE** comes before the Court for consideration of Plaintiff's Motion

for Default Judgment Against Defendant, Eastern Account Systems of Connecticut,

Inc., (Dkt. 18), and the Joint Stipulation of Dismissal with Prejudice as to Equifax

Information Services LLC. (Dkt. 19) The Clerk previously entered a Rule 55(a) default

against Defendant Eastern Account Systems of Connecticut, Inc. (Dkt. 13) The Court

concludes that it has federal question jurisdiction over Plaintiff's Fair Credit Reporting

Act ("FCRA") and Fair Debt Collection Practices Act ("FDCPA") claims and

supplemental jurisdiction over Plaintiff's Florida Consumer Collection Practices Act

("FCCPA") claim. 28 U.S.C. §§ 1331, 1367. Because the factual allegations of

Plaintiff's well-pleaded Complaint state facially plausible claims for relief under the

FDCPA, FCCPA, and FCRA, the Motion for Default Judgment is **GRANTED**.

    Upon consideration the foregoing, it is **ORDERED** that

1. Plaintiff's Motion for Default Judgment Against Defendant, Eastern Account Systems of Connecticut, Inc., (Dkt. 18), is **GRANTED**.

2. The **Clerk** is **DIRECTED** to enter default judgment as follows:

   a. In favor of Plaintiff Scott Earnhart and against Defendant Eastern Account Systems of Connecticut, Inc. in the total amount of **$3,000.00**, comprised of $1,000.00 pursuant to 15 U.S.C. 1692k(a)(2)(A), $1,000.00 pursuant to 15 U.S.C. 1681n(a)(1)(A), and $1,000.00 pursuant to Fla. Stat. § 559.77.

   b. In favor of Plaintiffs and against Defendants, jointly and severally, in the amount of **$3,130.00** in attorney's fees and **$278.00** in costs.

   c. Post-judgment interest shall accrue at the rate provided for in 28 U.S.C. § 1961 from the date of entry of final judgment to the date of payment.

3. Pursuant to Fed. R. Civ. P. 41, this case is **DISMISSED WITH PREJUDICE** as between Plaintiff and Defendant Equifax Information Services LLC.

4. The **Clerk** is directed to terminate any pending motions and **CLOSE** this case.

   **DONE** and **ORDERED** in Tampa, Florida, on this 7th day of November 2022.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All Counsel of Record
All *Pro Se* parties

2

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

JACQUELINE BURNAM,

             Plaintiff,

v.

EASTERN ACCOUNT SYSTEM OF
CONNECTICUT, INC.; and TRANS
UNION LLC,

             Defendants.

Case No.: 1:21-cv-03306-TWT-JKL

**ORDER OF FINAL DEFAULT
JUDGMENT AGAINST
DEFENDANT EASTERN
ACCOUNT SYSTEM OF
CONNECTICUT, INC.**

Pending before the Court is Plaintiff's Motion for Entry of Default Judgment.

Therefore, this court finds that judgment be entered in favor of Plaintiff

Jacqueline Burnam and against Defendant Eastern Account System of Connecticut,

Inc., and the Plaintiff is hereby awarded damages in the amount of $6,000.00 and

attorneys' fees and costs in the amount of $3,683.75.

THERE BEING NO JUST REASON FOR DELAY, IT IS HEREBY ORDERED

that:

1. Plaintiff's Motion for Entry of Final Default Judgment against Defendant

   Eastern Account System of Connecticut, Inc. is **GRANTED**.

2. Judgment in favor of Plaintiff Jacqueline Burnam and against Defendant

1

Eastern Account System of Connecticut, Inc. in the total amount of $9,683.75 inclusive of statutory damages, punitive damages, attorney's fees and costs.

3. Defendant Eastern Account System of Connecticut, Inc. is further ordered to correct its reporting to credit reporting agencies of Jacqueline Burnam's Eastern Account (Account No. 35348****) to reflect a status of included in bankruptcy and a zero balance.

4. This Judgment against Defendant Eastern Account System of Connecticut, Inc. is entered pursuant to Rule 54(b), Federal Rules of Civil Procedure.

5. The Clerk shall CLOSE this case against Defendant Eastern Account System of Connecticut, Inc. ONLY.

SO ORDERED this 8th day of December, 2021.

Hon. Thomas W. Thrash, Jr.
United States District Judge

2

### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

**JACLYN RATTNER**                                        Civil No. 3:21cv982 (CSH)
*Plaintiff,*

v.

**EASTERN ACCOUNT SYSTEM OF**
**CONNECTICUT, INC.,**                                    March 17, 2023
*Defendant.*

### DEFAULT JUDGMENT

This matter came on for consideration before the Honorable Charles S. Haight, Jr.,

United States District Judge, as a result of plaintiff's Motion for Default Judgment pursuant

to Fed. R. Civ. P. 55(b) (Doc. #11).  On March 16, 2023, a Ruling (Doc. #12) granting in part

and denying in part that motion was entered, and default entered as to Eastern Account

System of Connecticut, Inc. in the aggregate amount of $2,141.00.

It is therefore ORDERED, ADJUDGED, and DECREED, pursuant to Fed. R. Civ. P.

54(b), that default judgment is entered in favor of plaintiff Jaclyn Rattner and against

defendant Eastern Account System of Connecticut, Inc., and the case is closed.

Dated at New Haven, Connecticut, this 17th day of March 2023.

DINAH MILTON KINNEY, Clerk

By: _____/s/_____
Breigh Freberg, Deputy Clerk

EOD: _March 17, 2023_

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JODY DWAYNE FLOWERS,

     Plaintiff,

v.                                                                Case No: 8:21-cv-1210-KKM-JSS

EASTERN ACCOUNT SYSTEM
OF CONNECTICUT, INC.,

     Defendant.

_____

## ORDER

Jody Flowers moves for default judgment against Eastern Account System of Connecticut, Inc. (Doc. 11.) The Magistrate Judge recommended that the Court grant the motion except as to Flowers's premature request for attorney's fees. (Doc. 13.)

The fourteen-day deadline for objections to the recommendation has passed. No one objected. Nevertheless, the Court reviews the Magistrate Judge's legal conclusions de novo. *See Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994); *Ashworth v. Glades Cnty. Bd. of Cnty. Comm'rs*, 379 F. Supp. 3d 1244, 1246 (M.D. Fla. 2019) (Steele, J.). After review, the Court concludes that default judgment against Eastern Account System is appropriate for the reasons the Magistrate Judge stated. (Doc. 13.)

Accordingly, the following is **ORDERED:**

1.    The Magistrate Judge's Report and Recommendation, (Doc. 13), is

      **ADOPTED** and made a part of this Order for all purposes.

2.    Plaintiff's Motion for Default Judgment against Eastern Account System of

      Connecticut, Inc., (Doc. 11), is **GRANTED.**

           a. The Court finds Plaintiff is entitled to an award of $2,000.00 in

              statutory damages and $452.00 in taxable costs.

           b. The Court also finds that Plaintiff is entitled to reasonable attorney's

              fees. Plaintiff must file a supplemental motion on attorney's fees

              **within 45 days of this Order,** as required in Local Rule 7.01(c).

3.    The Clerk is directed to **ENTER** judgment in Plaintiff's favor and against

      Eastern Account System of Connecticut, Inc., **in the amount of $2,452.00.**

4.    The Clerk is directed to **TERMINATE** any pending motions or deadlines

      and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on February 5, 2022.

Kathryn Kimball Mizelle
United States District Judge

FILED
2022 Feb-11 PM 01:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **CHARLENE WILLIAMS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **Case No.: 5:20-cv-1996-LCB** |
| | ) |
| **EASTERN ACCOUNT SYSTEM** | ) |
| **OF CONNECTICUT, INC.,** | ) |
| | ) |
| **Defendant.** | |

## MEMORANDUM OPINION

On December 11, 2020, the Plaintiff, Charlene Williams, filed a complaint alleging that the Defendant, Eastern Account System of Connecticut, Inc., violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"). The Defendant was served with the complaint and summons on January 15, 2021, via Certified U.S. Mail, Return Receipt., to its registered agent CT Corporation System, at 2 North Jackson Street, Suite 605, Montgomery, Alabama 36104. (Doc. 7). Thus, Defendant's answer was due on February 5, 2021. However, the Defendant did not respond to the complaint. Accordingly, the Clerk entered default pursuant to Fed. R. Civ. P. 55(a) on February 9, 2021. (Doc. 9).

Presently before the Court is a motion for default judgment and an award of damages. (Doc. 12). Williams asks that she be awarded damages, pursuant to 15 U.S.C, § 1692k(a)(1), for Defendant's improper collection actions, namely $1,000

in actual damages for the emotional distress, aggravation and damages to credit that she suffered and, in addition, $1,000 in statutory damages.  She has also asked for attorney's fees and court costs totaling $4,116.50.

## I.    Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the complaint asserts causes of action arising under federal law, specifically, the Fair Debt Collections Practices Act, 15 U.S.C. 1692.  Venue is proper because the Plaintiff asserted that the acts and transactions occurred in the Northern District of Alabama; the Plaintiff resides here; and, the Defendant transacts business here.

## II. Legal Standard

Rule 55(b), Fed. R. Civ. P., provides:

(b) Entering a Default Judgment.

> (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal

2

statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

Default judgment is appropriate where the plaintiff's well-pleaded allegations of fact form "a sufficient basis in the pleadings for the judgment entered." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (citation omitted). A plaintiff shows a "sufficient basis" for entry of default judgment if its complaint plausibly states a claim for relief—a test similar to the test courts employ to evaluate a motion to dismiss under Rule 12(b)(6). *See id.* (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997)). Though similar to the test courts employ to evaluate the sufficiency of a complaint under Rule 12(b)(6), in the default context, the Court deems the plaintiff's well-pleaded allegations as admitted by the defendant. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (citation omitted). Default judgment is warranted if the facts that the Court deems admitted state a plausible claim for relief.

### III. Williams's complaint sufficiently alleged a violation of the FDCPA.

In her complaint, Williams alleged that the Defendant acts as a debt collector, as defined by § 1692a of the FDCPA, because it regularly uses the mails and/or the

3

telephone to collect, or attempt to collect, defaulted consumer debts that it did not originate.   She further claimed that the Defendant operates a defaulted debt collection business and attempts to collect debts from consumers in many states, including consumers in the State of Alabama.

According to Williams, the Defendant attempted to collect a debt from her that she allegedly owed to a cable company.  Unsure about the validity of the debt, Williams hired an attorney who, on October 2, 2020, wrote a letter to the Defendant disputing the debt it was attempting to collect.  Despite that notice, Williams learned on December 1, 2020, that the Defendant continued to report the subject debt to at least two credit bureaus without notifying them that the debt was disputed.  This, Williams said, impaired her credit rating and caused her alarm, confusion, and distress.

Section 1692e of the FDCPA prohibits debt collectors from using any false, deceptive or misleading means to collect or attempt to collect a debt, including, but not limited to, communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed, *see* 15 U.S.C. § 1692e(8)("…the following conduct is a violation of this section…including the failure to communicate that a disputed debt is disputed.).  Deeming William's allegations admitted, and having reviewed the exhibits attached to the complaint, the

4

Court finds that she has sufficiently alleged in Count I of her complaint a violation of 15 U.S.C. § 1692e(8), of the FDCPA.

Williams also alleged in Count II of her complaint that the Defendant's above-mentioned conduct violated 15 U.S.C. § 1692f by using unfair and unconscionable means to attempt to collect a debt. Specifically, Williams claimed the Defendant violated this section when it continued to report the debt to credit bureaus despite knowing that the debt was disputed and by failing to report that the debt was disputed. The Court finds these allegations to sufficiently state a claim under § 1692f.

As to damages, the Court notes that 15 U.S.C. § 1692k provides:

Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

…

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

In assessing damages under this section, a Court is to consider, among other relevant factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional…." *Id.* The Court finds that Williams's complaint alleges facts supporting the imposition of actual damages in the amount of $1,000 and statutory damages in the amount of $1,000. The Court finds these amounts to be reasonable based on the affidavits and other materials contained in the record and does not find it necessary to hold a hearing. A hearing on damages is not required "where all essential evidence is already of record." *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005)(citations omitted). *See also Natures Way Marine, LLC v. N. Am. Materials., Inc.*, 2008 WL 801702, at *3 (S.D. Ala. Mar. 24, 2008)("[I]t is not necessary to conduct an evidentiary hearing to fix damages if the amounts sought by plaintiff are adequately supported by supporting affidavits and other documentation.").

The Court also finds Williams's request for attorneys' fees and costs to be reasonable. Counsel submitted an affidavit detailing his firm's work on this case and included an annotated list of the hours worked. The Court finds the rates and the hours worked to be reasonable for this particular case and hereby awards the requested amount of $3,564.50 in attorneys' fees and $552 in court costs. *See* (Doc. 12-3).

6

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Williams's motion (Doc. 12) and enters default judgment in her favor against the Defendant. The Court assesses both actual and statutory damages in the total amount of **$2,000.00** and attorneys' fees and costs in the amount of **$4,116.50**. A separate final judgment will be entered.

**DONE** and **ORDERED** February 11, 2022.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE

FILED
2020 Dec-03 AM 09:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

TIFFANY CENTENO,                          }
                                          }
    Plaintiff,        }
                                          }
v.                                        }   Case No.: 2:20-CV-01266-MHH
                                          }
EASTERN ACCOUNT SYSTEM                    }
OF CONNECTICUT, INC.,                     }
                                          }
    Defendant.        }

## ORDER

Consistent with the discussion on the record during the December 2, 2020 telephone conference in this matter, the Court grants plaintiff Tiffany Centeno's motion for default judgment. (Doc. 15). A transcript of the telephone hearing will be available.

In considering whether to enter default judgment, the Court reviewed the sufficiency of Ms. Centeno's complaint and its underlying substantive merits to determine whether she is entitled to default judgment. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997). For the reasons stated on the record, the Court determines that Ms. Centeno is entitled to default judgment. The Court has subject matter jurisdiction pursuant to 28 U.S. § 1331. Based on the

allegations in the complaint, it appears that the Court may exercise jurisdiction over the defendant, Eastern Account System of Connecticut, Inc. Ms. Centeno has sufficiently stated a claim under the Fair Debt Collection Practices Act, codified at 15 U.S.C. § 1692, *et seq*. The actual and statutory damages and the attorney's fees that Ms. Centeno requests are reasonable.

Accordingly, the Court enters a default judgment against Eastern Account System of Connecticut, Inc. and awards Ms. Centeno $2,000 for actual and statutory damages. Additionally, the Court awards attorney fees of $4,356.50. The Court asks the Clerk to please close the file.

**DONE** and **ORDERED** this December 3, 2020.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

NATHAN KIRKPATRICK,

      Plaintiff,

      v.                                                       CIVIL NO. 2:19cv473

EASTERN    ACCOUNT    SYSTEM    OF
CONNECTICUT, INC.,

      Defendant.

## ORDER

      This matter comes before the Court on an unopposed Motion for Default Judgment filed

by Nathan Kirkpatrick ("Plaintiff"), by counsel. ECF No. 8. For the reasons set forth below, the

Court hereby **GRANTS** Plaintiff's Motion for Default Judgment and **ORDERS** the Clerk to enter

judgment in favor of Plaintiff and against defendant Eastern Account System of Connecticut, Inc.

("Defendant") on Plaintiff's Fair Debt Collection Practices Act ("FDCPA") claim in the total

amount of $4,307.50, with postjudgment interest calculated in accordance with 28 U.S.C. § 1961

and accruing from the date of entry of judgment.

### I.      PROCEDURAL BACKGROUND

      On September 11, 2019, Plaintiff filed a Complaint in this Court against Defendant.

Compl., ECF No. 1. The action was brought due to Defendant's violations of the FDCPA in

connection with its attempt to collect on Plaintiff's personal medical services debt. Id. at 1, 4. On

October 1, 2019, the Complaint was served on Defendant. ECF No. 4. To date, Defendant has

not filed a responsive pleading. As such, on November 4, 2019, the Clerk entered a default against

Defendant pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. ECF No. 8.

On December 6, 2019, Plaintiff filed his Motion for Default Judgment as to Defendant,

seeking judgment against Defendant in the sum certain amount of $4,307.50, including $1,000.00

in statutory damages, $2,829.50 in attorney's fees, and $478.00 in court costs. ECF No. 8 at 2. In

support of such motion, Plaintiff filed a Declaration in Support of Motion for Default Judgment,

see Declaration of Kenneth McLeod, ECF No. 8-1. Plaintiff's Motion for Default Judgment is

now before the Court.

## II.    APPLICABLE LAW

Rule 55 of the Federal Rules of Civil Procedure ("Rule 55"), which governs default

judgments, establishes a two-step process for acquiring a default judgment. First, the plaintiff

must secure an entry of default under Rule 55(a). Where, as here, the plaintiff has appropriately

secured an entry of default by the Clerk, "a plaintiff may then move for entry of default judgment."

S. Bank & Trust Co. v. Pride Grp., LLC, No. 2:14cv255, 2015 WL 410726, at *3 (E.D. Va. Jan.

28, 2015) (emphasis removed). Rule 55(b) outlines two procedural avenues for entering a default

judgment. Rule 55(b)(1) states:

> *By the Clerk.* If the plaintiff's claim is for a sum certain or a sum that can be made
> certain by computation, the clerk-on the plaintiff's request, with an affidavit
> showing the amount due-must enter judgment for that amount and costs against a
> defendant who has been defaulted for not appearing and who is neither a minor nor
> an incompetent person.

Fed. R. Civ. P. 55(b)(1). If, however, Rule 55(b)(1) does not apply to the particular facts of the

case, a party may seek a default judgment from the Court. Rule 55(b)(2) states:

> *By the Court.* In all other cases, the party must apply to the court for a default
> judgment . . . . If the party against whom a default judgment is sought has appeared
> personally or by a representative, that party or its representative must be served
> with written notice of the application at least 7 days before the hearing."

Fed. R. Civ. P. 55(b)(2). Whether plaintiff's request for a default judgment is brought under

subsection (b)(1) or (b)(2), the Court must determine whether the complaint states a valid cause of

2

action. Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, 155 F.3d 500, 505 (4th Cir. 1998). "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact" except those relating to the amount of damages. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (quoting Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)); Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). As a result, "the appropriate inquiry is whether the facts as alleged state a claim." Globalsantafe Corp. v. Globalsantafe.Com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).

In his complaint, Plaintiff alleges claims under the FDCPA. To prevail on such a claim, a plaintiff must demonstrate that "(1) the plaintiff is a 'consumer' within the meaning of the statute; (2) the defendant collecting the debt is a 'debt collector' within the meaning of the statute, [and]; (3) the defendant has violated by act or omission a provision of the FDCPA." Creighton v. Emporia Credit Serv., Inc., 981 F. Supp. 411, 414 (E.D. Va. 1997). With respect to the first element, the FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The FDCPA further defines "debt" as an obligation to pay money arising out of a transaction which is "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Second, the statute defines "debt collector," in pertinent part, as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692a(6).

The Complaint shows that Plaintiff is a natural person who allegedly incurred a debt for medical services. Compl. ¶¶ 15, 16. Plaintiff, therefore, is a "consumer" within the meaning of the statute. Defendant, a debt collection business, communicated with Plaintiff via mail to collect a debt allegedly owed. Id. ¶ 19. Defendant, therefore, is a "debt collector" under the FDCPA.

Finally, the Complaint alleges that Defendant's acts or omissions resulted in numerous violations
of the FDCPA. For the reasons discussed below, the Court finds that Defendant violated the
FDCPA.

## III.   JURISDICTION

"A court must have both subject matter and personal jurisdiction over a defaulting party
before it can render a default judgment." Dutan v. Sheet Metal Remodeling, LLC, 48 F. Supp. 3d
860, 865–66 (E.D. Va. 2014). The Court finds that it has subject matter jurisdiction over Plaintiff's
lawsuit pursuant to 15 U.S.C. § 1692k(d), which provides that "[a]n action to enforce any liability
created by this subchapter may be brought in any appropriate United States district court without
regard to the amount in controversy . . . within one year from the date on which the violation
occurs." The Court also finds that it has personal jurisdiction over Defendant pursuant to Federal
Rule of Civil Procedure 4(k)(1)(A) and Va. Code § 8.01–328.1(A)(1).

## IV.   LIABILITY

Plaintiff moves for default judgment on his FDCPA claim. The following relevant facts
are established by: Plaintiff's Complaint, ECF No. 1; Motion for Default Judgment, ECF No. 8;
and Declaration in Support of Motion for Default Judgment, see Declaration of Kenneth McLeod,
ECF No. 8-1.

Defendant, a debt collection company, mailed Plaintiff a written communication dated
September 13, 2018 in relation to Plaintiff's medical services debt ("Debt"). Compl. ¶¶ 16, 17,
19; see September 13, 2018 Letter, ECF No. 1-1. In said letter, Defendant identifies the Debt with
"EAS Account Number: 33237012" and "Creditor #: 615486008037-1." See September 13, 2018
Letter, ECF No. 1-1. In relevant part, the letter stated, "***FINAL NOTICE*** Our records
indicate that you owe $179.00 which is long past due. Pay this account immediately. This is

4

absolutely final." Id.

Despite the notice of its September 13, 2018 letter, Defendant nonetheless subsequently mailed Plaintiff a written communication dated March 8, 2019 in relation to Plaintiff's Debt. Compl. ¶¶ 23, 24; see March 8, 2019 Letter, ECF No. 1-2. In said letter, Defendant again identifies the Debt with "EAS Account Number: 33237012" and "Creditor #: 615486008037-1." See March 8, 2019 Letter, ECF No. 1-2. However, unlike Defendant's September 13, 2018 letter, the March 8, 2019 identified the balance of Plaintiff's Debt as $222.17, a sum $43.17 greater than the balance originally identified in the September 13, 2018 letter. Id.; Compl. ¶ 29.

Due to this discrepancy, Plaintiff contacted Defendant and requested billing information to validate the Debt. Compl. ¶ 30. Plaintiff received the requested documents dated August 14, 2019. Id. ¶ 31; see Validation Letter and Billing Statements, ECF No. 1-3. Within the validation letter are two handwritten account numbers, 33237012 and 33670351. See Validation Letter and Billing Statements, ECF No. 1-3 at 2. The first billing statement lists the creditor's account number as 5852-615486008235 and identifies the balance of the Debt as $43.17. See Id. at 3. The second billing statement lists the creditor's account number as 5862-615486008037 and identifies the balance of the Debt as $179.00. Id. at 4. Therefore, the $222.17 balance identified in Defendant's March 8, 2019 letter was comprised of the $179.00 balance for account number 33237012 and the $43.17 balance for account number 33670351. Compl. ¶ 36. In other words, Defendant's March 8, 2019 letter failed to disclose that the outstanding balance consisted of *both* accounts. Id. ¶ 37. Without the Validation Letter and Billing Statements, Plaintiff could not have known that the balance listed in the March 8, 2019 letter consisted of two distinct and separate accounts. Id. ¶ 40. Rather, Plaintiff could have reasonably assumed that the Debt had increased in the time between the September 2018 letter and the March 2019 letter due to accrued interest, fees, or other charges.

Id. ¶ 41.

Further, Plaintiff contends that the March 8, 2019 letter was Defendant's first communication with Plaintiff with respect to the Debt associated with account number 33670351. Id. ¶ 38. Because the March 8, 2019 letter constituted Defendant's first communication with Plaintiff regarding account number 33670351, Plaintiff alleges that Defendant failed to provide Plaintiff with requisite notice pursuant to 15 U.S.C § 1692g(a). Id. ¶ 39. For the reasons discussed below, the Court finds that Defendant violated the FDCPA.

### A.    Sufficiency of Allegations in Count I

Count I alleges that Defendant violated 15 U.S.C. § 1692e, which generally prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." The Fourth Circuit has established that "[w]hether a communication is false, misleading, or deceptive in violation of section 1692e is determined from the vantage of the 'least sophisticated consumer.'" Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 394 (4th Cir. 2014) (citing United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996)). That is, to determine whether a debt collector has violated the FDCPA, the Court considers "how the least sophisticated consumer would interpret the notice from the debt collector." Dikun v. Streich, 369 F. Supp. 2d 781, 785 (E.D. Va. 2005) (citing Talbott v. GC Servs. Ltd. P'ship, 53 F. Supp. 2d 846 (W.D. Va. 1999)).

To support the claim that Defendant violated Section 1692e, the Complaint incorporates Defendant's conduct alleged in the Complaint. Compl. ¶ 43. Taking the allegations of the Complaint as true, Defendant's March 8, 2019 letter was misleading, as it failed to inform Plaintiff that the $222.17 balance consisted of both the $179.00 account and the $43.17 account. See Vitullo v. Mancini, 684 F. Supp. 2d 747, 757–58 (E.D. Va. 2010) ("[T]he Fourth Circuit has held that 'the

6

test is the capacity of the statement to mislead; evidence of actual deception is unnecessary.'"

(quoting Nat'l Fin. Servs., Inc., 98 F.3d at 139)).  As Plaintiff properly identifies in his Complaint,

the least sophisticated consumer might have reasonably concluded that the increased balance was

due to accrued interest, fees, or other charges.  Compl. ¶ 41.  In addition, the representation could

have affected how Plaintiff chose to respond to Defendant regarding the newly-revealed and

largely unexplained increase in balance.  See Conteh v. Shamrock Cmty. Ass'n, Inc., 648 F. App'x

377, 379 (4th Cir. 2016) (per curiam) (noting that "[a] misstatement that 'would have been

important to the consumer in deciding how to respond to efforts to collect the debt'" will sustain a

claim under section 1692e (quoting Powell v. Palisades Acquisition XVI, LLC, 782 F.3d 119, 127

(4th Cir. 2014))).  Accordingly, Count I sufficiently states a claim against Defendant for violation

of 15 U.S.C. § 1692e.

### B.    Sufficiency of Allegations in Count II

Count II alleges that Defendant violated 15 U.S.C. § 1692e(2)(A), which prohibits debt

collectors from falsely representing the character, amount, or legal status of a debt.  This count

also sufficiently states a claim against Defendant because, as stated above, Plaintiff plausibly

alleged that Defendant's September 13, 2018 and March 8, 2019 letters misleadingly represented

the character and amount of the Debt.  Accordingly, for essentially the same reasons described

above in Count I, Count II sufficiently states a claim against Defendant for violation of 15 U.S.C.

§ 1692e(2)(A).  See Carter v. Countrywide Home Loans, Inc., No. 3:07CV651, 2008 WL 4167931,

at *10 (E.D. Va. Sept. 3, 2008) ("Plaintiffs support their contention that Countrywide

misrepresented the character of the debt by alleging that Countrywide, through its trustee, White,

provided inconsistent payoff amounts of $218,305.83 on October 17, 2006, and $212,874.37 on

December 14, 2006.").

**C.    Sufficiency of Allegations in Count III**

Count III alleges that Defendant violated 15 U.S.C. § 1692e(10), which prohibits debt

collectors from using false representations or deceptive means to collect or attempt to collect a

debt.    More specifically, "[i]t is a violation to send any communication that conveys to the

consumer a false sense of urgency."  FTC Official Staff Commentary on the Fair Debt Collection

Practices Act, 53 Fed. Reg. 50097–50110 (1988).

Here, Defendant's September 13, 2018 letter to Plaintiff conveyed a false sense of urgency

in violation of the FDCPA.    In relevant part, the letter aggressively stated, "***FINAL

NOTICE*** Our records indicate that you owe $179.00 which is long past due.  Pay this account

immediately.    This is absolutely final."  September 13, 2018 Letter, ECF No. 1-1.    Despite

conveying a sense of finality and urgency, Defendant nonetheless subsequently contacted Plaintiff

in its March 8, 2019 letter, in which it requested payment of the same $179.00 in addition to an

amount of $43.17.  As such, Defendant's September 13, 2018 letter could easily be interpreted by

the least sophisticated consumer as creating a false sense of urgency.  See Fariasantos v. Rosenberg

& Assocs., LLC, 2 F. Supp. 3d 813, 822 (E.D. Va. 2014) ("Making false or misleading statements

. . . may also be a violation of § 1692e(10) if the statement is a deceptive collection practice

designed to impart a false sense of urgency to the consumer."); Morgan v. Credit Adjustment Bd.,

Inc., 999 F. Supp. 803, 808 (E.D. Va. 1998).  Accordingly, Count III sufficiently states a claim

against Defendant for violation of 15 U.S.C. § 1692e(10).

**D.    Sufficiency of Allegations in Count IV**

Count IV alleges that Defendant violated 15 U.S.C. § 1692g(a), which requires a debt

collector to send a consumer written notice of a debt within five days after the debt collector's

initial communication with the consumer.  The written notice must contain certain information,

8

including the amount of the debt and statements about the consumer's rights and responsibilities.
15 U.S.C. § 1692g.

Defendant initially communicated with Plaintiff regarding account number 33670351 in
its March 8, 2019 letter. Compl. ¶ 38. After this initial communication on account number
33670351, Defendant failed to provide Plaintiff with the requisite notices pursuant to 15 U.S.C. §
1692g. Id. ¶ 39. Accordingly, Plaintiff sufficiently states a claim against Defendant for violation
of 15 U.S.C. § 1692g. See, e.g., Anderson v. Didonato, No. 1:12cv643, 2012 WL 6553675, at *3
(E.D. Va. Nov. 19, 2012) (Report and Recommendation) adopted by No. 1:12cv643, 2012 WL
6561259 (E.D. Va. Dec. 14, 2012) (finding a violation of section 1692g where a debt collector
failed to provide requisite written notice to consumer); Richardson v. William Sneider &
Associates, LLC, No. 4:12cv25, 2012 WL 3525625, at *6 (E.D. Va. July 24, 2012) (Report and
Recommendation) adopted by No. 4:12cv25, 2012 WL 3525621 (E.D. Va. Aug. 14, 2012) (same).

## V.   DAMAGES

Having found that the Complaint states valid claims against Defendant, the Court must
next determine the appropriate relief. The FDCPA allows an individual plaintiff to recover actual
damages, statutory damages up to $1,000.00, and attorney's fees and costs. 15 U.S.C. § 1629k(a).
According to the Complaint and Motion for Default Judgment, Plaintiff seeks a sum certain of
$4,307.50, which includes $1,000.00 in statutory damages, $2,829.50 in reasonable attorney's
fees, and $478.00 in court costs. ECF No. 8 at 2.

### A.   Statutory Damages

A court may award up to $1,000.00 in statutory damages for violations of the FDCPA. 15
U.S.C. § 1629k(a)(2)(A); see also Dryden, 2015 WL 3646649, at *6 (finding multiple FDCPA
violations and awarding $1,000.00 in statutory damages); Barnett v. Creditors Specialty Serv.,
Inc., No. 1:12cv303, 2013 WL 1629090, at *2 (W.D.N.C. Apr. 16, 2013) ("The statute provides

for damages of $1,000.00 per lawsuit, not per incident.") (citations omitted). In determining the appropriate amount of statutory damages, a court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1629k(b)(1).

In this case, Defendant persistently violated the FDCPA over a period of at least seven months. See Compl. ¶¶ 15–42. Among other violations, Defendant made misleading representations to Plaintiff and failed to make required disclosures when communicating with him. Additionally, and perhaps most importantly, Defendant's September 13, 2018 letter instilled in Plaintiff a false sense of urgency and finality. Considering Defendant's noncompliance with the FDCPA and the section 1629k(b)(1) factors, a statutory damages award of $1,000.00 is proper.

### B.    Attorney's Fees and Costs

The FDCPA also provides that a consumer may recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). When a plaintiff in an FDCPA action establishes liability, an award of attorney's fees is mandatory except in "the most unusual circumstances." Carroll v. Wolpoff & Abramson, 53 F.3d 626, 628 (4th Cir. 1995) (citing Graziano v. Harrison, 950 F.2d 107, 113–14 (3d Cir. 1991)). A court has discretion to determine a reasonable award amount, Carroll, 53 F.3d at 628–29, but the analysis must begin with calculation of the lodestar figure. Grissom v. Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008). The lodestar figure is "the amount determined by multiplying 'the number of hours reasonably expended on the litigation' by 'a reasonable hourly rate.'" Carroll, 53 F.3d at 628 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). To determine a "reasonable" number of hours and rate, the Court is guided by the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the

attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243–44 (4th Cir. 2009) (quoting Barber v.

Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978)).  In addition to these factors, "the court

must exclude any hours that are 'excessive, redundant, or otherwise unnecessary,' as such hours

are not reasonably expended on the litigation." Project Vote/Votingfor Am., Inc. v. Long, 887 F.

Supp. 2d 704, 709 (E.D. Va. 2012) (quoting Hensley, 461 U.S. at 434).

To demonstrate the reasonableness of the time expended, the party requesting attorney's

fees must submit proper documentation of the number of hours the attorney(s) spent on the case.

Dryden, 2015 WL 3646649, at *7 (citing E.E.O.C. v. Nutri/Sys., Inc., 685 F. Supp. 568, 573 (E.D.

Va. 1988)).  To demonstrate the reasonableness of the hourly rate, the party requesting attorney's

fees must submit, "[i]n addition to the attorney's own affidavits, . . . satisfactory specific evidence

of the prevailing market rates in the relevant community for the type of work for which he seeks

an award." Grissom, 549 F.3d at 321 (quoting Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)).

Satisfactory evidence includes "affidavits of other local lawyers who are familiar both with the

skills of the fee applicants and more generally with the type of work in the relevant community."

Robinson, 560 F.3d at 245.

Plaintiff requests $2,829.50 in attorney's fees, $400.00 for the filing fee paid on his

behalf, and $78.00 for the cost of serving Defendant with the complaint. ECF No. 8 at 2;

Declaration of Kenneth McLeod, ECF No. 8-1 at 2.  The requested attorney's fees of $2,829.50

are calculated based upon "a total of 9.7 hours of attorney and paralegal time at hourly rates ranging

from $135 per hour to $350 per hour." Supplemental Documentation Substantiating Request for

Attorney's Fees and Costs, ECF No. 10 at 1. The time spent and work performed is documented

in an itemized statement attached to Plaintiff's Supplemental Documentation Substantiating

Request for Attorney's Fees and Costs. ECF No. 10-1. Plaintiff's counsel has also provided

precedent in the jurisdiction that demonstrates his firm's billing rates are reasonable and consistent

in FDCPA cases heard in the Eastern District of Virginia. ECF No. 10 at 2 (citing Randle v. H&P

Capital, Inc., No. 3:09CV608, 2010 WL 2944907, at *9 (E.D. Va. July 21, 2010) (finding fees at

rates of up to $450 per hour reasonable in FDCPA case)). Additionally, Plaintiff's counsel has

submitted the United States Consumer Law Attorney Fee Survey Report for 2017-2018, which

breaks down the consumer law billing rates by geography and specific practice area. ECF No. 10

at 3. This Survey Report is the only consumer law survey "whose methodologies have been

independently peer reviewed and is supported by the National Association of Legal Fee Analysis,

a non-profit professional national association of attorney fee experts in the field of legal fee

analysis." ECF No. 10-2 at 21. Plaintiff's counsel provides this Survey Report to show that

Plaintiff's billing rates are reasonable as consumer law attorneys in Norfolk, Virginia have billing

rates ranging from $288 to $694, with a median rate of $78. to show that Plaintiff's billing rates

are reasonable. Id. at 480.

Considering Mr. McLeod's affidavit, Plaintiff's Supplemental Documentation

Substantiating Request for Attorney's Fees and Costs, and attorney's fees awards for other

FDCPA default judgment cases in this district, the Court finds that the time expended on this case,

9.7 hours, is reasonable. ECF No. 10, at 1. As such, Plaintiff shall be awarded $2,829.50 in

attorney's fees and $478.00 in costs.

## VI.    CONCLUSION

Based on the above facts, which are deemed admitted by the defaulting Defendant, the

Court **FINDS** that Plaintiff has stated a FDCPA claim against Defendant and that entry of default judgment is appropriate under Rule 55(b). In addition, the Court **FINDS** that Plaintiff's requested award in the sum certain amount of $4,307.50 is supported by competent evidence through Plaintiff's sworn declaration.

Accordingly, the Court hereby **GRANTS** Plaintiff's Motion for Default Judgment, ECF No. 8, and **ORDERS** the Clerk to enter default judgment in favor of Plaintiff Nathan Kirkpatrick and against Defendant Eastern Account System of Connecticut, Inc. in the amount of $4,307.50 with postjudgment interest calculated in accordance with 28 U.S.C. § 1961 and accruing from the date of entry of judgment.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record and Defendant.

**IT IS SO ORDERED**.

Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, VA
February 28, 2020

13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **JESSIE RUDDICK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Cause No. 1:17-cv-1644-WTL-MJD** |
| | ) |
| **EASTERN ACCOUNT SYSTEM OF** | ) |
| **CONNECTICUT, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

**ENTRY ON MOTION FOR DEFAULT JUDGMENT**

This cause is before the Court on the Plaintiff's Verified Motion for Entry of Default

Judgment (Dkt. No. 9). A hearing was held on the motion on August 28, 2017. The Defendant

was given notice of the hearing, both by the Court and by Plaintiff's counsel, but did not appear.

The Court, being duly advised, now **GRANTS** the motion.

At the hearing, the Plaintiff sought statutory damages pursuant to the Fair Debt

Collection Practices Act ("FDCPA") in the amount of $1,000. *See* 15 U.S.C. § 1692k

(successful plaintiff in FDCPA case entitled to statutory damages not to exceed $1,000). As

alleged in the Complaint and established by the entry of default in this case, the Defendant

violated the FDCPA by reporting a debt to the Experian credit reporting agency without

indicating that the debt was disputed despite the fact that the Plaintiff informed the Defendant, in

writing, that he disputed the debt. This was more than a technical violation of the FDCPA in that

it had an actual impact on the Plaintiff's credit report, thus satisfying the standing requirement.

The Court finds the requested $1,000 to be an appropriate statutory damages award in this case.

At the hearing, the Plaintiff also requested an award of attorney fees and costs in the

amount of $4,824.21. With one exception—the $2.00 PACER service fee is not compensable as

costs—the Court finds the request reasonable and properly supported by the affidavit of counsel

submitted as Hearing Exhibit 7. The Court therefore awards the Plaintiff $4,132.50 in attorney

fees and $689.71 in costs, for a total of $4,822.21.

Accordingly, default judgment will be entered in this case in the amount of $5,822.21.

SO ORDERED:      8/30/17

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CARLA SNOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-CV-1229-SMY-RJD |
| | ) | |
| EASTERN ACCOUNT SYSTEM OF | ) | |
| CONNECTICUT, INC., a Connecticut | ) | |
| Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND JUDGMENT OF DEFAULT

This matter is before the Court on Plaintiff's motion for entry of default judgment (Doc.

17). Plaintiff filed the instant action against Defendant Eastern Account System of Connecticut,

Inc. on November 5, 2015 alleging violations of the Fair Debt Collection Practices Act, 15

U.S.C. § 1692, et seq. and the Illinois Consumer Fraud and Deceptive Business Practices Act,

815 ILCS § 505/2 (Doc. 1). Defendant was served with a copy of the summons and Complaint

on November 19, 2015 (Doc. 8). Thus, Defendant's responsive pleading was due to be filed on

or before December 10, 2015. However, Defendant failed to answer Plaintiff's Complaint or

otherwise plead and an order of default was entered against it (Doc. 10).

Under the Federal Rules of Civil Procedure, a defendant must file its answer "within 21

days after being served with summons and complaint." Fed.R.Civ.P. 8(a)(1)(A)(i). A defendant

who fails to do may be found in default under Federal Rule of Civil Procedure 55(a). It is in the

district court's discretion whether to enter default judgment. *O'Brien v. R.J. O'Brien & Assocs.,*

*Inc.,* 998 F.2d 1394, 1398 (7th Cir.1993). Default judgment establishes, as a matter of law, that a

defendant is liable to the plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci,* 879 F.2d 1488, 1497 (7th Cir.1989).

When a defendant is found in default, all factual allegations in the Complaint are deemed admitted and not subject to challenge. *Black v. Lane,* 22 F.3d 1395, 1399 (7th Cir.1994). However, allegations in the Complaint relating to the amount of damages are not deemed admitted. *Dundee Cement Co. v. Howard Pipe & Concrete Prods.,* 722 F.2d 1319, 1323 (7th Cir.1983); *see also* Fed.R.Civ.P. 8(b)(6). The court may conduct hearings when it is necessary to perform an accounting, ascertain damages, "establish the truth of any allegation by evidence," or investigate any other matter. Fed.R.Civ.P. 55(b)(2)(A)–(D). Here, consistent with her Complaint, Plaintiff seeks maximum statutory damages of $1,000 plus reasonable attorney fees and costs. As such, the damages on default are ascertainable without the necessity of a hearing.

Accordingly, Plaintiffs motion is **GRANTED.** Default Judgment is entered in favor of Plaintiff Carla Snow and against Defendant Eastern Account System of Connecticut, Inc. in the amount of $1,000.00. Further, Plaintiff is awarded the reasonable value of attorneys' fees and costs and the Court will retain jurisdiction to determine the amount based upon a petition for attorneys' fees and costs that shall be filed, along with the necessary supporting documentation in accordance with the Federal and Local Rules, within thirty (30) days of the entry of this Order.

**IT IS SO ORDERED.**

**DATED: January 5, 2017**

**s/ Staci M. Yandle**
**STACI M. YANDLE**

EXHIBIT 12

22 29-1969



# Western Surety Company

NOV 12 2013  357

OC5
MAR 1 1 2014
REGISTRATION AND ACCOUNT
CORRECTION UNIT #5

## RIDER

It is hereby mutually agreed and understood by and between the   Principal   and Western

Surety Company, that instead of as originally written:

the address has been changed to read, 75 Glen Road, Suite 310, Sandy Hook, CT 06482, instead of as
originally written.

RECEIVED
JAN 0 6 2014
ATTORNEY GENERAL'S OFFICE

OC5
NOV 0 5 2013
REGISTRATION AND ACCOUNT
CORRECTION UNIT #5

Nothing herein contained  shall  be  held  to  vary, alter, waive  or  extend  any  of  the  terms, limits  or

conditions of the _____ bond _____ , except as hereinabove set forth.

This Rider becomes effective on the   21st   day of   October   , 2013 , at
twelve and one minute o'clock a.m., standard time.

Attached to and forming part of ___ bond ___ No. 70770684 ___
issued  by  WESTERN  SURETY  COMPANY  of  Sioux  Falls,  South  Dakota;  to
Eastern Account System of Connecticut, Inc.

Signed this   21st   day of   October   , 2013

Approved as to sufficiency of form and manner of
execution this 10th day of
MARCH , 20 14 .
Patrick Morrisey, Attorney General
By: _____
Chief Counsel

WESTERN  SURETY  COMPANY

By _____
Paul T. Bruflat, Senior Vice President

Form 128-4-2002

EXHIBIT 13

```
 1                  IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
 2                             AT BECKLEY

 3       _____x
                                         :
 4       MICHAEL SHERIDAN,               :
                                         :
 5                    Plaintiff,         : Civil Action No:
           -vs-                          : 5:23-cv-00238
 6                                       :
         EASTERN ACCOUNT SYSTEM          :
 7       OF CONNECTICUT, INC.,           :
         EQUIFAX INFORMATION SERVICES,   :
 8       LLC, AND TRANS UNION, LLC       :
                                         :
 9                    Defendants.        :
         _____x

10

11                           DAMAGES HEARING
                    BEFORE THE HONORABLE FRANK W. VOLK
12                     UNITED STATES DISTRICT JUDGE
                        IN BECKLEY, WEST VIRGINIA
13                          JANUARY 5, 2024

14

15       APPEARANCES:
         For the Plaintiff:        JED ROBERT NOLAN, ESQUIRE
16                                  NOLAN CONSUMER LAW
                                    Post Office Box 654
17                                  Athens, WV 24712

18

19

20

21

22           Proceedings recorded by mechanical stenography,
         transcript produced by computer.

23           _____

24                  AMANDA J. PICKENS, CCR, RPR, FCRR
                    Federal Official Court Reporter
25                  Robert C. Byrd U.S. Courthouse
                      300 Virginia Street, East
                        Charleston, WV  25301
```

*Amanda J. Pickens, RPR, CCR, FCRR (304) 347-3188*

INDEX

| PLAINTIFF'S WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS | EXAM |
|---|---|---|---|---|---|
| MICHAEL SHERIDAN | 11 | | | | |

| PLAINTIFF'S EXHIBITS | MARKED |
|---|---|
| 1 | 15 |
| 2 | 17 |
| 3 | 18 |
| 4 | 19 |
| 5 | 19 |
| 6 | 21 |
| 7 | 22 |

```
1                    (The following proceedings were held before the

2        Honorable Frank W. Volk, United States District Judge, in

3        the case of Michael Sheridan v. Eastern Account System of

4        Connecticut, Inc., Equifax Information Services, LLC and

5        Trans Union, LLC, on January 5, 2024, at Beckley,

6        West Virginia, beginning at 10:05 a.m.)

7                    THE COURT:  We're here in the matter of Sheridan

8        versus Eastern Account Systems.

9            I'll ask counsel to please note your appearance for the

10       record.

11                   MR. NOLAN:  Good morning, Your Honor.  Jed Nolan

12       on behalf of Michael Sheridan.

13                   THE COURT:  Mr. Nolan, the purpose of this hearing

14       is to permit you to offer any evidence you desire to put in

15       the record consistent with the allegations of the complaint

16       on your default judgment request.  What I wanted to ask you

17       at the outset, I believe -- is it the case that your

18       client's seeking punitive damages?

19                   MR. NOLAN:  Yes, Your Honor.  That's one of the

20       claims -- one of the damages options available under

21       15 U.S.C. 1681n for a willful violation.  If the Court were

22       to find that Eastern Account Systems willfully violated the

23       Fair Credit Reporting Act, the Court would be permitted to

24       award punitive damages in this instance.  And we're going to

25       present very brief testimony and exhibits to argue that the
```

1  Court would be -- this would be an appropriate case for

2  exemplary damages against the debt collecting defendant.

3         THE COURT:  And where is it that you're servicing

4  that willfulness requirement for entitlement?  Is that a

5  matter of case law under the act or is that some other

6  source that you're getting that from?

7         MR. NOLAN:  The case law varies on what the --

8  determines willfulness.  Willfulness can be a reckless

9  disregard of the law under the *Safeco* Supreme Court case.

10 And our position is that they are recklessly disregarding

11 consumer rights.  We've got evidence of a pattern and

12 practice nationally of defaulting on judgments after

13 engaging in the prohibited practice of credit parking.

14     And I'm ready to argue to the Court about what that is

15 and what the -- and present evidence about the other default

16 judgments Eastern Account is incurring nationwide and argue

17 that this is not just an isolated incident with Mr. Sheridan

18 where he's just fell through the cracks of Eastern Account's

19 dispute resolution process, but instead this is a pattern

20 and practice of a systemic issue with Eastern Account.  This

21 is exactly what they intend to do is to collect debts in

22 this manner and put consumers in these very difficult

23 positions and --

24         THE COURT:  If memory serves, there is a principle

25 out there for this company against which you seek default

1    judgment.

2              MR. NOLAN:  That's correct.  Eastern Account is a

3    third-party debt collector.  The original creditor is

4    Frontier Communications.  Eastern Account specializes in

5    debt collection of small medical bills, telecommunications

6    bills.  They're often in the value range of what

7    Mr. Sheridan had on his credit report of $209.  They're

8    generally small balance debts.  And what they do is they

9    engage --

10             THE COURT:  I'm not interested in that right now.

11   If you could, pull that microphone closer and just listen

12   carefully to my questions and let me finish first.

13       Did you say the name of the principle of Eastern

14   Accounts?

15             MR. NOLAN:  Yes, Your Honor.  Frontier

16   Communications, the Internet provider in West Virginia.

17             THE COURT:  Well, that's not what I'm speaking of.

18   We have the corporation there, Eastern Account System of

19   Connecticut, Incorporated.

20             MR. NOLAN:  Yes, Your Honor.

21             THE COURT:  Is there an individual who is

22   associated with that particular entity?  In other words, do

23   you have the name of an incorporator or a board member, an

24   officer of the corporation?

25             MR. NOLAN:  I believe his name is Steven Zink

1   [phonetic], Your Honor, on the Secretary of State website.

2          THE COURT:  Okay.  You said Zink [phonetic].  How

3   do you spell that?

4          MR. NOLAN:  Z-I-N-K [sic].

5          THE COURT:  And what is Mr. Zink's status?  Have

6   any of these plaintiff entities gone after him personally or

7   is that not the case?

8          MR. NOLAN:  That's not the case that I've seen,

9   Your Honor, in our research of PACER.

10         THE COURT:  So does he just continue to operate

11  freely under the umbrella of Eastern Account even to this

12  day perhaps?

13         MR. NOLAN:  That's my understanding, yes, Your

14  Honor.

15         THE COURT:  Understood.

16     Well, you did seek punitive damages in your complaint.

17  What allegations of the complaint would satisfy the

18  willfulness standard that you advocate?  And you if could,

19  point to them by number.

20         MR. NOLAN:  In the complaint, Your Honor, yes.

21  And so in our complaint we allege that Eastern Account --

22         THE COURT:  What number paragraph are you on?

23         MR. NOLAN:  The count itself is paragraph 40.  But

24  in the fact section, Your Honor -- you know, beginning at

25  paragraph 18, we describe the indirect dispute process under

1     the Fair Credit Reporting Act and that the three credit

2     bureaus relayed the dispute letter and its contents to

3     Eastern Account as required --

4            THE COURT:  One moment.  What I want you to do,

5     sir, is please go paragraph by paragraph and simply identify

6     one and make a summary statement.  I need to know the

7     specific allegations which tie with your allegation of

8     willfulness from a factual standpoint.

9            MR. NOLAN:  Yes, Your Honor.  Paragraph 18 says

10    that all three credit bureaus relayed the dispute letter and

11    its contents to Defendant EASC.

12         Paragraph 19 describes how the defendants incorrectly

13    confirmed that the plaintiff owed an account that had been

14    adjudicated in his favor previously.

15         And as of -- then we get into damages after that.

16            THE COURT:  Okay.  So 19 is what you're relying on

17    for willfulness; is that correct?

18            MR. NOLAN:  That's from the complaint, Your Honor,

19    yes.  And then we would present argument of our post-filing

20    investigation onto PACER, which we would ask the Court to

21    take judicial notice of the other lawsuits nationwide.

22         The problem with default and asking for punitives, so

23    the Court's aware, is we don't have discovery to have EAS

24    confirm their intent to park these on people's credits,

25    they're dispute resolution procedures to really hammer in

1    and can't confirm the willfulness.  But that is the claim

2    that -- those are the allegations that we draw the

3    willfulness claim.

4           THE COURT:  Well, here's the difficulty with the

5    setting that we find ourselves in vis-à-vis the complaint.

6    As you doubtless know, and you've done this in this very

7    case, you serve process on the defendant.  Which I

8    understand you did here by personal service; is that

9    correct.

10          MR. NOLAN:  Yes, Your Honor.  We initially did in

11   April via Secretary of State and then we did it again in

12   September via personal service --

13          THE COURT:  Okay.

14          MR. NOLAN:  -- at Document 24.

15          THE COURT:  So the defendant we know has been

16   served with the complaint.  The complaint is the limit of

17   the Fourteenth Amendment notice from a due process

18   standpoint that Eastern has.  So for instance, Eastern could

19   very well have taken this complaint and said -- and I'm not

20   saying it did, of course.  But it could have read the

21   complaint, read the notice of the allegations that are there

22   and found, and said, Well, this Plaintiff's going to get

23   compensatory damages against us, but it's only got a

24   paragraph or two in there on willfulness.  I think we're

25   pretty safe.  I don't think the judge will order punitives

1  and we'll just -- we'll suffer the entry of default

2  judgment.  Because all the defendant had notice of from a

3  willfulness standpoint was what you said here -- what you've

4  identified in paragraphs 18 and 19.

5      So do you see the issue?  There may be a notice of due

6  process issue with us now receiving -- the Court receiving

7  evidence outside the four corners of the complaint about

8  willfulness because that goes beyond the notice that the

9  defendant had from the allegations in the complaint, which

10  in essence are now going to be admitted under the rules

11  about what willfulness occurred in this particular case.

12      I understand what you're saying about other cases and

13  the fact that this may be a pattern and practice.  The

14  problem is, that's not within the four corners of the

15  complaint.  All that I have from the standpoint of

16  undisputed allegations, now that we're at the default

17  setting, is 18 and 19 that you identified.  And I'm not sure

18  that gives rise to a willfulness finding.  Do you follow me?

19          MR. NOLAN:  Yes, Your Honor.  And if I may, just

20  point to the additional allegations in the -- Count 4 in the

21  beginning of paragraph 41.

22          THE COURT:  Oh, I didn't know about paragraph 41.

23  Okay.  Very good.  Let's move to that one.

24          MR. NOLAN:  In paragraph 41, we allege that over

25  -- on one or more occasions over the past two years Eastern

1    Account violated 15 U.S.C. 1681s-2(b), which is their duty

2    to consumers, by failing to fully and properly investigate

3    Plaintiff's disputes.

4        And then paragraph 42 we say, Defendant violated the

5    same -- the next subsection of that same FCRA section by

6    failing to review all relevant information provided by the

7    consumer reporting agencies.

8        We talk about in paragraph 43 that when the plaintiff

9    mailed its disputes to the CRAs that the e-Oscar system was

10   used, which has been adopted by the credit reporting

11   agencies and their furnisher-customers, such as EAS.  It's

12   as an automated system.  The system is systemic and uniform.

13       And paragraph 44, we go on to allege that EAS Defendant

14   failed to review all relevant information provided by the

15   credit bureaus pursuant to 1681i.

16       Paragraph 45, we state Defendant failed to conduct a

17   reasonable investigation with respect to the disputed

18   information.

19       And then chapter -- or paragraph 47, we allege that

20   their conducts were willful, rendering them liable for

21   punitive damages under 1681n.

22       So we did provide notice that we are seeking that

23   damage in the complaint based on their pattern.  But, again,

24   I understand the Court's concern that --

25            THE COURT:  Had you mentioned that at the outset,

1    we would be hearing your client now.

2              MR. NOLAN:  So I apologize, Your Honor.

3              THE COURT:  Understood.  Having now heard that

4    information, I think that gives rise to an inference that

5    would permit additional testimony from your client.  In

6    other words, there's enough in the allegations -- the bare

7    allegations to put the defendant on notice that there might

8    be other information that's presented at the hearing on

9    willfulness.  And so you may call your client, if you wish.

10             MR. NOLAN:  Mr. Sheridan, to the witness stand,

11   please.

12             THE COURT:  Sir, if you would please come forward

13   and be sworn.

14             MADAM CLERK:  Please raise your right hand.

15       **MICHAEL SHERIDAN, WITNESS, SWORN**

16             THE COURT:  Good morning, Mr. Sheridan.

17             THE WITNESS:  Good morning, sir.

18             THE COURT:  You may proceed.

19                    **DIRECT EXAMINATION**

20   **BY MR. NOLAN:**

21   **Q.**  Good morning, Mr. Sheridan.  Can you please state your

22   name for the record?

23   **A.**   Michael Cales Sheridan.

24             THE COURT:  One moment, Mr. Sheridan.

25        Would you please work from the podium?

```
 1                MR. NOLAN:  Yes, sir.
 2                THE COURT:  That will assist the court reporter
 3   and I think the mike may be a little closer to you.
 4                MR. NOLAN:  Yes, sir.
 5   BY MR. NOLAN:
 6   Q.   Mr. Sheridan, are you familiar with Eastern Account
 7   Systems?
 8   A.   Yes, sir.
 9   Q.   They're collecting an alleged debt from you, correct?
10   A.   That's correct.
11   Q.   And do you know who they're trying to collect on behalf
12   of?
13   A.   Yes, sir.
14   Q.   Who's that?
15   A.   That would be Frontier Communications.
16   Q.   Now, you have a history with Frontier Communications,
17   correct?
18   A.   I did have, yes, sir.
19   Q.   And you used their services for Internet?
20   A.   I did use their services for a number of years, yes,
21   sir.
22   Q.   And you sued Frontier at some point, didn't you?
23   A.   Yes, sir.
24   Q.   What did you sue them for?
25   A.   Essentially, the services -- the Internet service was
```

1    satisfactory for a number of years.  And I came in one day

2    and it was -- it just didn't work.  It was broken.  I wasn't

3    able to look at a web page.  I wasn't able to check an

4    e-mail.  I wasn't able to do the things one normally does

5    with the Internet.  So I called and asked them to fix it.

6    And they never did.

7    Q.    And who represented you in that prior case?

8    A.    My son, Attorney Ben Sheridan.

9    Q.    And Jonathan Marshall, Bailey -- Bailey Glasser

10   co-counsel with him in that?

11   A.    Also.  Yes, sir.

12   Q.    And you filed a lawsuit in October of 2014?

13   A.    Yes, sir.

14   Q.    And that was eventually compelled to arbitration,

15   right?

16   A.    Yes, sir.

17   Q.    And did you pursue it in arbitration?

18   A.    Yes, sir.

19   Q.    What was the result of that?

20   A.    The result was -- I believe the arbitration judge --

21   that's probably the only term for him.  But I believe he

22   issued a ruling.  It was 30-some pages long.  And what it

23   meant to me in the end was that I received a settlement of

24   $809.

25   Q.    And that's a reasonable value of services that you

1    paid?  Have you got a refund for what you --

2    **A.**   I got a refund, yes.  I had a refund for $809, yes,

3    sir.

4    **Q.**   And your attorneys got paid on that as well?

5    **A.**   Yes, sir.  I think they were paid very well.

6    **Q.**   And did you have any balance due following that

7    arbitration with Frontier?

8    **A.**   No, sir.

9    **Q.**   And when was that completed?

10   **A.**   2019.  I believe it was March.

11   **Q.**   Okay.

12   **A.**   It was probably a little bit after that before the

13   ruling was issued and so forth, but the hearing was in

14   March.

15   **Q.**   That arbitration resolved everything with Frontier at

16   that point?

17   **A.**   Yes, sir.

18   **Q.**   You had no balance due to them?

19   **A.**   No, sir.

20   **Q.**   Okay.  How did you first hear about Eastern Account

21   Systems?

22   **A.**   I saw an entry on my credit report that referenced

23   them.

24   **Q.**   They never called you?

25   **A.**   No.

1    Q.    They never mailed you a letter?

2    A.    No.

3    Q.    Never e-mailed you a letter?

4    A.    No, sir.

5    Q.    They just parked it on your credit?

6    A.    Yes, sir.

7    Q.    Are you familiar with the term credit parking?

8    A.    I'm not an attorney, obviously, but I've read a little

9    bit about it.  I recently read a paper from the FTC that

10    describes the process, so I have some -- some knowledge

11    about what it is, yes, sir.

12         MR NOLAN:  May I approach the witness, Your Honor?

13         THE COURT:  Yes.

14         MR. NOLAN:  It's been marked for identification

15    purposes as Exhibit 1.

16         THE COURT:  One moment, please.  Please take that

17    document to the courtroom deputy and have her mark and

18    record it.

19         MR. NOLAN:  Judge, would you like a copy as well?

20         THE COURT:  Certainly.

21    (Plaintiff's Exhibit Number 1 is marked for

22    identification.)

23         THE WITNESS:  Thank you.

24    **BY MR. NOLAN:**

25    Q.    Do you recognize this article, Mr. Sheridan?

1    A.    Yes, sir.

2    Q.    Is this the FTC article you were referring to just

3    previously in your testimony?

4    A.    Yes, sir.

5    Q.    And this is where you learned about credit parking?

6    A.    Yes, sir.

7    Q.    And what's your understanding of credit parking?

8    A.    My understanding is it's a process by which a debt

9    collector places a credit report on an individual's -- with

10   one of the three credit reporting agencies.  Oftentimes,

11   these reports are small amounts.  They are often bogus, as I

12   understand it, or at least highly questionable debts --

13   alleged debts.  They make no real effort to collect the

14   debt.  They just leave it on the credit report and wait for

15   a time when the consumer needs to use credit for some

16   reason.  Say they're buying a house or purchasing a car or

17   something of that nature and it creates a problem, reduces

18   your credit score, obviously creates a problem when you try

19   to borrow money to do something.  So that's when the

20   consumer finds out about it, as they start investigating why

21   they have a problem.

22   Q.    And that's what happened to you in this case, correct?

23   A.    Yes, sir.  That's what happened to me.

24         MR. NOLAN:  Okay.  I'd like to mark Plaintiff's

25   Exhibit 2.

```
 1          (Plaintiff's Exhibit Number 2 is marked for

 2     identification.)

 3     Q.    Mr. Sheridan, do you recognize this message?

 4     A.    Yes, sir.

 5     Q.    Is this the message you directed your attorney to send

 6     when you learned about the -- Eastern Account's credit

 7     reporting?

 8     A.    Yes, sir.

 9     Q.    And who is that message to?  Do you recognize who you

10     sent that message to?

11     A.    Well, my attorney is Benjamin Sheridan.  David Fenwick

12     is an attorney who represents Frontier Communications.

13     Q.    So when you learned that there was a trade line or a

14     negative account on your credit report, you reached out to

15     Frontier's counsel, correct?

16     A.    Correct.

17     Q.    Okay.  Did you -- did anything -- did you receive a

18     response from this?

19     A.    No, sir.

20     Q.    Okay.  What was your assumption after this point?

21     A.    My assumption was that it had been taken care of.  My

22     understanding from the hearing was that I didn't owe

23     anything.  And so my assumption was it was just a technical

24     mistake somebody made and it had been taken care of after

25     this message.
```

```
 1   Q.    But it hadn't been taken care of, correct?
 2   A.    Correct.
 3   Q.    And what happened in October of 2022?
 4   A.    I bought a used car.  I traded cars actually.  And
 5   during the process of purchasing the car -- actually, later
 6   on, the next day or so after I -- after I purchased the car
 7   -- I had it financed through the dealership -- the car
 8   dealership.  Later on, I realized -- I was looking at the
 9   paperwork, going through the fine print and I realized that
10   I had just signed a note for almost 19 percent interest rate
11   on a car loan.  And so I started investigating what
12   happened.
13        (Plaintiff's Exhibit Number 3 is marked for
14   identification.)
15   Q.    Can you look at Exhibit 3, please?
16   A.    Yes, sir.
17   Q.    Is this the credit report you accessed after -- when
18   you started investigating why you had such a high interest
19   rate?
20   A.    Yes, sir.
21   Q.    And I've tabbed a page at the beginning there.  Do you
22   see where the highlight is?
23   A.    You're on page 5?
24   Q.    Yes.
25   A.    Yes, sir.
```

1    Q.    And what is that?

2    A.    Eastern Account Systems, Incorporated.

3    Q.    And that's under the collection agency section?

4    A.    That's correct.

5    Q.    So this was -- this is the only negative report on your

6    credit, correct?

7    A.    That's correct.

8    Q.    And that was the reason that you had such a high

9    interest rate?

10   A.    Yes, sir; that was correct.

11   Q.    So what did you do at that point?

12   A.    Well, my attorney assisted me in this.  We filed

13   disputes with Equifax indicating that it was incorrect --

14   incorrect information on my credit report.

15        (Plaintiff's Exhibit Number 4 is marked for

16   identification.)

17   Q.    I've just handed you what's been marked for

18   identification as Exhibit 4.  Are these the dispute letters

19   you mailed to Equifax?

20   A.    Yes, sir.

21   Q.    Okay.  And to your knowledge, Equifax received these?

22   A.    Yes, sir.  These were mailed by certified mail with

23   return receipt requested.

24        (Plaintiff's Exhibit Number 5 is marked for

25   identification.)

1  **Q.** Now, Exhibit 5 I've just shown you, your attorney has

2  went over this with you, correct?

3  **A.** I'm sorry. I didn't hear you.

4  **Q.** Exhibit 5 that I've just shown you, your attorneys went

5  over this with you, correct?

6  **A.** Yes, sir.

7  **Q.** And do you recall what this was?

8  **A.** (No response.)

9  **Q.** This was Equifax's internal records of the dispute; is

10 that correct?

11 **A.** Yes, sir. I recall this. Uh-huh.

12 **Q.** This is -- it's completed through an automated process

13 called an automated consumer dispute verification system,

14 correct?

15 **A.** Yes, sir.

16 **Q.** And then on the second page we've highlighted where

17 Equifax's computer records acknowledged receipt on

18 December 25th?

19 **A.** Yes, sir.

20 **Q.** And it was responded to in Eastern Account by a person

21 named Darcy Damato?

22 **A.** That's correct.

23 **Q.** So Eastern Account did receive this dispute based on

24 these records, to your knowledge?

25 **A.** Yes. Apparently somebody at Eastern Account named

1   Darcy Damato processed it.

2   **Q.**   And at the very bottom there's a bold and highlighted

3   section where Eastern Account verified that the account was

4   accurate, that you owed $200, correct?

5   **A.**   That's correct.

6   **Q.**   That's what Eastern Account told Equifax?

7   **A.**   That is correct.

8   **Q.**   Okay.

9       (Plaintiff's Exhibit Number 6 is marked for

10  identification.)

11          THE COURT:  Mr. Nolan, how much longer do you

12  believe you have?

13          MR. NOLAN:  Maybe ten minutes, Your Honor.  I'm

14  trying to --

15          THE COURT:  I have another hearing at 10:30.  I'm

16  wondering if we ought to bump this to after the noon hour

17  when those proceedings have concluded.  Do you think you can

18  address it expeditiously?

19          MR. NOLAN:  I believe so, Your Honor.  I want to

20  talk about damages, so maybe it would be good to bump it

21  after noon.

22          THE COURT:  Well, what I would say is, I will give

23  you an opportunity to file a post-hearing brief where you

24  can put that argument.  I'm just interested in you having

25  the opportunity to get your evidence in.  How much longer do

1    you think that will take?

2              MR. NOLAN:  I'm just trying to -- I'm sorry, Your

3    Honor.  I really do believe ten minutes I could --

4              THE COURT:  We'll just proceed with it then.  Go

5    ahead.

6    **BY MR. NOLAN:**

7    **Q.**   What I've just shown you, Mr. Sheridan, is Exhibit 6.

8    And this is the response you received from Equifax, correct?

9    **A.**   Yes, sir.

10   **Q.**   And that's where they informed you they verified that

11   the trade line was -- stayed on?

12   **A.**   That's correct.

13   **Q.**   Okay.  You previously testified that you got a car loan

14   October 2022; is that correct?

15   **A.**   Yes, sir.  It was October 15th.

16        (Plaintiff's Exhibit Number 7 is marked for

17   identification.)

18   **Q.**   And do you recall what the interest rate was?

19   **A.**   It was 18 and a fraction percent.  Close to 19 --

20             THE COURT:  Please align your questions --

21             MR. NOLAN:  Yes, Your Honor.  I'm sorry.

22             THE COURT:  -- to the time you're at the podium.

23   **BY MR. NOLAN:**

24   **Q.**   And I know it's difficult to read on Exhibit 7 because

25   it's a carbon copy, but your interest rate was over

1    18 percent?

2    **A.**    Yes, sir.

3    **Q.**    And the finance charge is going to be over $24,000?

4    **A.**    Yes, sir.

5    **Q.**    And your monthly payment was going to be $790, correct?

6    **A.**    793, I believe.

7    **Q.**    Okay.  Do you know what the historical prime rate was

8    in October of 2022?

9    **A.**    On -- it was about 7 percent.

10    **Q.**    And how do you know that?

11    **A.**    I looked it up on -- I believe it was Chase Bank and

12    checked their historical prime rates for that period of

13    time.

14    **Q.**    Did you research to see what a loan finance on your

15    terms would be under the historical prime rate of 7 percent?

16    **A.**    I'm sorry.  A loan financed on what terms?

17    **Q.**    At 7 percent interest as opposed to the 18 percent

18    interest.

19    **A.**    Oh, yes, sir.  Actually, I used an amortization

20    calculator to generate an amortization schedule, which shows

21    the details of the loan at that percentage rate.

22    **Q.**    And the monthly payment would have been 577; is that

23    correct?

24    **A.**    That's correct.

25    **Q.**    Which is $200 less than you are paying right now?

**A.** That's correct.

**Q.** And the total finance charge would have been 6,700; is that correct?

**A.** That is correct.

**Q.** Which is $17,000 less than you're paying at this point?

**A.** Yeah, I would say. Yes, sir. About $17,000.

**Q.** You were denied credit based on this as well, correct?

**A.** Correct.

**Q.** Do you recall which company denied you credit?

**A.** There was -- there were a couple of different finance companies that the auto dealership had approached. Yes. One of them was Santander.

**Q.** Okay. And so you paid an additional $18,000 in finance charges, which you're paying at this point, correct?

**A.** Yes, sir.

**Q.** You've had $200 a month of income that you haven't been able to use for yourself?

**A.** That's correct.

**Q.** Including paying for power bills, paying for your medications, visiting your grandkids?

**A.** That's correct; yes, sir.

**Q.** It curtailed business opportunities, having negative credit?

**A.** Yes, sir.

**Q.** What business do you own?

1    **A.**    My partner and I have a mobile barbecue business.  We

2    sell barbecues at fairs, festivals, sometimes just beside

3    the road.

4    **Q.**    So you weren't able to invest in that business --

5    **A.**    Yes.  My partner has been after me for years to get a

6    bigger cooker so we could cook more product.  And it's about

7    a $20,000 investment that we're not able to finance.

8    **Q.**    You attempted to get solar panels for your home?

9    **A.**    We did, yes, sir.

10    **Q.**    Did that work?

11    **A.**    That credit was denied for that initially.  However,

12    within the last 30 days after the changes have been made on

13    the credit reports, we've got that worked out.

14    **Q.**    And when we sue Experian -- or when we sued Equifax and

15    Trans Union, they removed the --

16    **A.**    Yes, sir.

17    **Q.**    -- trade line from your credit?

18    **A.**    That's correct.

19    **Q.**    So this is no longer on your credit?

20    **A.**    That's correct.

21    **Q.**    And you were able to get financing for your solar now?

22    **A.**    After they removed it, yes, sir.

23         MR. NOLAN:  All right.  I have no further

24    questions for Mr. Sheridan, Your Honor.

25         THE COURT:  Thank you very much.  Does that

1    conclude your evidence?

2              MR. NOLAN:  I have the default orders that I can

3    submit in a supplemental briefing, Your Honor, or I can

4    submit them to the Court now.

5              THE COURT:  You're welcome to attach those to your

6    briefing.

7              MR. NOLAN:  Yes, Your Honor.

8              THE COURT:  What I'm going to ask you to do as

9    well -- will two weeks --

10        And, sir, you may take -- you're excused from the

11   witness stand.

12             THE WITNESS:  Thank you.

13             THE COURT:  If you would please serve -- well,

14   first of all, would two weeks give you sufficient time to

15   prepare your --

16             MR. NOLAN:  Yes, sir.

17             THE COURT:  -- post-hearing brief?  Very good.

18        I hate to put you to the difficulty of doing so, but if

19   you would, please also serve a copy of that brief on the

20   defendant against which -- against which you seek default

21   judgment.  And if it's possible, please also have a copy of

22   that delivered to Mr. Zink.  I don't want to put you to any

23   overriding obligation, but I think to the extent Mr. Zink is

24   not aware of what's happening that -- across the nation, he

25   should be reminded of it.  Because the conduct here does

1    appear to be repetitive, without any justification

2    whatsoever and it's frankly reprehensible.  And so I will

3    very likely, based on the evidence I've heard, what you've

4    tendered and what you will submit hereafter, make a

5    willfulness finding, assuming again that that is the

6    appropriate standard for entitlement to punitive damages

7    under the act.

8        I wanted to compliment you as well, Mr. Sheridan.  It's

9    been a long road through arbitration and through this

10   proceeding to right what was an obvious wrong.  I will tell

11   you that there are likely countless consumers that have

12   difficulties of this same sort who are not as vigorous in

13   asserting their rights.  When consumers do this on an

14   individual basis, they send a message to these companies

15   that they need to get it right the first time.  Consumers

16   are expected to get it right the first time, generally

17   speaking, by paying their bills.  And there's no reason why

18   these entities shouldn't get it right as well.  Mere volume

19   is not an excuse in any way, shape or form.  And if, as in

20   this case, we do have some willfulness or misconduct going

21   on, it makes it all the worse.

22       So with that matter, we'll adjourn the hearing.  I'm

23   not going to enter an order on this, but I would ask you to

24   please within two weeks submit your post-hearing brief on

25   damages and also please tender a proposed default judgment

1    order that is aligned with your brief and with your motion

2    for default judgment.

3              MR. NOLAN:  Yes, Your Honor.

4              THE COURT:  Thank you very much.  We're adjourned.

5              MR. NOLAN:  Thank you.

6              (Proceedings concluded at 10:35 a.m., January 5,

7    2024.)

8

9    CERTIFICATION:

10        I, Amanda J. Pickens, Federal Official Court Reporter,

11    certify that the foregoing is a true and correct transcript

12    from the record of proceedings in the above-entitled matters

13    as reported on January 5, 2024.

14

15        s/Amanda J. Pickens, CCR, RPR, FCRR   February 7, 2024

16        Amanda J. Pickens, CCR, RPR, FCRR
          Federal Official Court Reporter
17

18

19

20

21

22

23

24

25